## Booth vs. Ableman and another.

Where the affidavit in replevin, upon which the sheriff, in obedience to a direction of plaintiff's counsel indorsed thereon, took the property from the possession of the defendants and delivered it to the plaintiff, showed on its face that the defendants held it as marshal and deputy marshal of the United States, by virtue of an execution issued upon a judgment rendered against the plaintiff in the United States court for the district of Wisconsin: *Held*, that the court had the power, and it was its duty, not only to order a return of the property to the defendants, but to render a judgment in their favor for its value in case a return could not be had.

APPEAL from the County Court of *Milwaukee* County.

The plaintiff having brought his action in said court to recover possession of certain personal property, the defendants admitted the taking and detention of the property, but justified on the ground that they took and detained it as marshal and deputy marshal of the United States, by virtue of an execution issued out of the district court of the United States for the district of Wisconsin, on a judgment rendered in that court against the plaintiff. Before filing his complaint, the plaintiff had filed an affidavit, in which, among other things, he stated that the alleged cause of the detention of the property in question by the defendants, was "a pretended levy by virtue of an execution upon a pretended judgment" in said district court, which was rendered in favor of one Garland, against the affiant, "on charge of having violated an act of congress of the United States, entitled" &c., and approved September 18, 1850, "by aiding and assisting one Joshua Glover, who owed service and labor, as was pretended, to said Garland, to escape from custody of the marshal of said district." The affidavit then charges that congress had no power to legislate on the subject of returning fugitives from service and labor, and that said pretended judgment was a nullity. In accordance with a direction of the plaintiff's counsel indorsed upon this affidavit, the sheriff took possession of the property and delivered it to the plaintiff. When the cause first came

up for trial, the court dismissed it for want of jurisdiction, without ordering a return of the property. On an appeal to this court, the judgment was reversed, and the cause remanded for further proceedings. See 16 Wis., 460. When the cause came on for trial again, the plaintiff's counsel, as *amicus curiæ*, suggested that it be dismissed for want of jurisdiction; and thereupon the court "did order and adjudge that the action be dismissed for want of jurisdiction, and that the sheriff return the property to the defendants." The defendants then asked the court "for judgment not only of return of the property, but for its value in case a return could not be had," but the motion was denied. The defendants then moved for leave to waive a return of the property, and for judgment against the plaintiff for its value. Motion denied. They then moved the court to instruct the jury to find a verdict upon the issue joined; that they find whether or not the defendants wrongfully took the property or wrongfully detained the same, in whom was the property, and who was entitled to the possession of it, its value, and the defendants' damages in case they should waive a return. Motion denied. The defendants appealed.

*J. E. Arnold*, for appellants.

*H. F. Prentiss*, for respondent, to the point that the court below had no jurisdiction of the suit, cited *Peck v. Jenness*, 7 How. (U. S.), 612; *Freeman v. Howe*, 24 id., 450; *Slocum v. Mayberry*, 2 Wheat., 8; *Keating v. Spink*, 3 Ohio St., 105; *Case of the Robert Fulton*, 1 Paine C. C. R., 626; *Case of the Oliver Jordan*, 2 Curtis C. C. R., 415; *Stoughton v. Mott*, 13 Vt.; 175; 1 Kent's Comm., 410. 2. If the seizure of the property by the sheriff was a nullity, and gave the court no jurisdiction over the property, an order of the court for a return of the property is equally a nullity. *Pollard v. Wegener*, 13 Wis., 572; *Rape v. Heaton*, 9 id., 328; *Atchinson v. Rosalip*, 4 Chand., 12. 3. The direction to the sheriff, indorsed upon the plaintiff's affidavit, requiring him to take the property and deliver it to the plaintiff, was not judicial process issued from the county

court; and the court had nothing to do with it. Moreover the affidavit was on its face insufficient to authorize such seizure by the sheriff, and he was simply a trespasser. The defendants, wrongfully and in violation of their judicial duty, surrendered the property, and could easily have got a return of it under sec. 6, chap. 128, R. S., or by an application to the United States court, under whose process they held it, or could have recovered the value of it in an action against the sheriff. *Slocum v. Mayberry*, 2 Wheat., 8; *Freeman v. Howe*, 24 How., 454; *Keating v. Spink*, 3 Ohio St., 105.

*By the Court*, DIXON, C. J.  I know not what I can say to make the former opinion more clear or certain. We there said that a doctrine so anomalous as that the court had no power to inquire into and correct an abuse of its own process, could be sustained only upon the clearest authority. We also said that we had attentively examined the decisions upon which it was rested, and that we were satisfied that it was unsustained. We say so now, and furthermore that we do not hesitate about the power of the court, not only to order a return of the property, but to give judgment for its value in case a return cannot be had.  It seems almost absurd to us, that the court, in such a case, should be without the power to make reparation for injuries caused by the improvident or wrongful issue or execution of its process.  To make such reparation is to advance the remedy and suppress the mischief. It tends directly to discourage any improper interference with property over which the courts of another jurisdiction or sovereignty have acquired control.  I do not think the making of such reparation involves any question of jurisdiction, strictly so called.  Regarding it in the light of a breach of that comity, or good behaviour, which should be maintained between the courts of the two governments towards each other, I think they should always have the power of making at least a respectable apology for wrongs inadvertently committed.  I am in favor of such pow-

er. It is true the federal supreme court has decided that the state courts have no power to persist in the wrong, when once ascertained : but that is a very different thing from deciding that they have no power to retract. Until this has been de· cided also, I shall hold that the state courts can retract, and not that only, but that it is their duty to do so in every instance, by placing the aggrieved party *in statu quo*, so far as their general jurisdiction and usual modes of proceeding will enable them. I think that the defendant's motion for judgment for the value of the property, in case a return could not be had, should have been granted, and that the judgment or order, by which ever name it may be known, should be reversed.

Ordered accordingly, and that the cause be remanded for further proceedings according to law.