## WARD VS. HENRY.

A state court has jurisdiction of an action in trespass by a mortgagee of chattels, who had gone into possession, against a United States marshal who seized the goods under an attachment from a federal court against the property of the mortgagor.

In trespass by a mortgagee of chattels against an officer who levied on a part of such chattels while in plaintiff's possession, under an attachment against the mortgagor, defendant claiming that the goods left in plaintiff's possession were sufficient to satisfy the mortgage, plaintiff is entitled to show that some of said goods were not the property of the mortgagor but of a third person.

Where an instruction was given not properly applicable to the evidence, and it appears probable that the jury were misled by it to the injury of the appellant, the judgment must be reversed.

Courts do not take judicial notice of the official character of a *deputy* marshal.

In trespass for the taking &c., of goods, where defendant justifies as deputy marshal, under process, the court is inclined to think that the fact of his having made return to such process as deputy marshal, which return was recognized by the U. S. court as valid, is not sufficient evidence of his official character.

APPEAL from the Circuit Court for *Green Lake* County.

Action for the wrongful taking and conversion of personal property of the alleged value of about $760. Defense, that the goods were the property of one Chase, and were seized by defendant as deputy U. S. marshal, under an attachment from the United States District Court for Wisconsin, in an

action by one Adams against said Chase for an indebtedness of $500. The answer contains the allegations usual in such cases.

The goods were seized by defendant on the 22d of November, 1859. On the trial, H. N. Ward, plaintiff's father, testified that at the time of said seizure by defendant, he was in possession of the goods in controversy, as plaintiff's agent, in the store occupied by Chase; that he took possession November 18, 1859, by virtue of three chattel mortgages given by Chase to plaintiff, to secure $1002 50 loaned to Chase by plaintiff, no part of which had been paid on the day last mentioned; that "witness received all the money deposited from September 1st to November 22d, and Chase was to use none of the money except to purchase goods for the store;" that witness had no knowledge that Chase used any of the money for which the goods were sold, for his private purposes; that after witness took possession, Chase had nothing to do with the goods; that up to the time of the levy made by defendant, Chase had paid on said indebtedness $300; that witness could not tell whether this was the full amount received for goods during that time or not, nor could he tell in whose name the money was deposited in the bank, but he (witness) could not draw it; that Chase did not render him any account of the goods while he (Chase) was in possession of them, but witness knew that the money was deposited as fast as it was received; that after said levy there were goods left in witness's hands amounting to $930 at invoice prices; that none of the goods so left were used to pay Chase's debts to other persons than plaintiff; that among said goods was some wall paper. *Question* by plaintiff: "Did any one own, or claim to own that wall paper?" Ruled out. *Question:* "Was the amount received on sale of that paper applied in payment of plaintiff's debt?" Ruled out. Witness further testified that the goods left in his hands were offered at private sale until May 16, 1860, when such as re-

mained unsold were disposed of at public auction after due no-
tice; that the gross amount of receipts from these sales was
$721.00; that witness employed Chase after the levy to help
dispose of the goods; that he (Chase) sold the goods at the
auction, as auctioneer; that witness paid him $50 for his ser-
vices; "that witness furnished the store in which said remain-
ing goods were kept from November 22, 1859, to May 16, 1860,
and the rent of the same was worth $75; that witness's per-
sonal services in the care and disposition of the goods during
the same period were worth $— [the amount is not shown by
the printed case; and the original papers are no longer on file
in this court]; and there were other expenses amounting
to $21.76; and that about $390 of Chase's indebtedness to
plaintiff remained unpaid. The chattel mortgages from Chase
to plaintiff, and the notes secured by them, were also put in
evidence. The defendant's evidence tended to show that there
were in the store from $2,000 to $2,200 worth of goods just
before the levy. One Love, as a witness for defendant, testi-
fied that he bought of Chase some goods from said store after
the levy. "I sold Chase's brother a wagon, and Chase paid
me out of his store about $5.00. Think Mr. Ward was pres-
ent." H. N. Ward, being recalled by plaintiff, testified that
he paid Chase's order in favor of said Love for $4.70, and
Chase had since paid him. Another witness for defendant
testified that in the spring of 1860 he "bought some goods out
of the store and gave Chase credit for them." Defendant also
put in evidence the record in the attachment suit.

The judge instructed the jury as follows: "1. If you find
that by the terms of the chattel mortgages Chase was consti-
tuted plaintiff's agent, and that he continued in the store under
said mortgages to dispose of the goods for plaintiff's benefit,
plaintiff is estopped from denying that agency, and is account-
able for the goods covered by the mortgages from the time
Chase so acted as his agent. 2. If Chase, while acting as such
agent, purloined the goods, or applied the proceeds of the sales

thereof to his own private purposes, without plaintiff's knowledge or consent, still plaintiff must account to Chase's creditors for the goods thus purloined or money misapplied." The court refused to instruct the jury (as requested by the plaintiff) "that there had been no evidence introduced by the defendant proving that, at the time of taking the goods in controversy, he was deputy U. S. marshal;" but on the contrary it instructed them that the fact that "defendant had served and returned papers in the district court as deputy marshal, and had been recognized by that court as such, was sufficient proof that he was, at the time of the taking of said goods, deputy marshal of the United States."

Verdict and judgment for the defendant; and the plaintiff appealed.

*Geo. D. Waring*, for appellant, contended that the court erred in ruling out the question asked the witness Ward as to the wall paper left in plaintiff's possession after the levy; and also erred in the second instruction given. To the point that the court erred in instructing the jury that the defendant's official character as deputy marshal had been proven, he cited *Wilcox v. Smith*, 5 Wend., 231; 1 Greenl. on Ev., § 6; *McCarty v. Gage*, 3 Wis., 404.

*Joshua La Due*, for respondent, to the point that, the district court having first acquired jurisdiction of the subject matter of this action by levying on the property, the circuit court had no jurisdiction, cited *Freeman v. Howe*, 24 How. (U. S.), 454, and cases there cited; *Booth v. Ableman*, 16 Wis., 460; *Gilman v. Williams*, 7 id., 329. 2. If the court went too far in giving the second instruction, still it could have had no weight with the jury, because there was no testimony before them to warrant them in believing that Chase purloined the goods or applied the proceeds to his own use. A judgment will not be reversed under such circumstances. *Hartwell v. Page*, 14 Wis., 49; Gra. & Wat. on N. T., 768, 796; 5 Ohio, 375; 9 Cow., 674; 1 Yerg., 89; 6 Vt., 257; 2 Black, 575; 10 Johns., 417.

*By the Court*, COLE, J.   The question of jurisdiction raised
by the respondent has been ruled adversely to him in the case
of *Booth v. Ableman*, 18 Wis., 495.

The evidence offered in regard to the wall paper was clearly
competent under the circumstances, and should have been ad-
mitted.   One ground of defense relied on by the respondent,
who represents the attaching creditor, is, that at the time he
seized the goods in controversy upon the writ of attachment,
he left in the possesssion of the mortgagee merchandize which
was included in the chattel mortgages of a sufficient amount
to satisfy the mortgage debt.   There was some wall paper em-
braced in the mortgages and in this stock of merchandize thus
left in possession of the appellant, and it was proposed to show
that somebody else besides the mortgagor owned or claimed to
own two thirds of it.   Was not the evidence competent and
proper to show that the plaintiff had not received his mortgage
debt out of the goods left in his possession, and that the mort-
gagor did not own the entire interest which he attempted to
mortgage?   It appears to us that it was competent evidence
for this purpose.   For, as is well remarked on the brief of
counsel, the plaintiff had no lien upon goods included in the
mortgages which did not belong to Chase, the mortgagor, and
therefore could not make such goods available to pay the mort-
gage debt.

If the mortgages were not void as to creditors, then mani-
festly the rule of damages is, the amount justly due upon them.
*Ward v. Henry*, 15 Wis., 239.

No serious effort is made to sustain the action of the court
in giving the second instruction asked by the defendant.   As-
suming it to be unsound as an abstract proposition, still it is
claimed by the respondent's counsel that it could have had no
weight with the jury in making up their verdict, because there
was no testimony before them to which the instruction could
possibly apply.   The mere irrelevancy of instructions given by
the court to the jury is said in itself, independent of all other

considerations, not to be a sufficient ground to authorize a new trial; but where injustice has been done by the verdict, and it is probable the jury were misled by the instructions, then we think a new trial should be granted. 3 G. & W. on New Trials, 792 et seq.; *Cannon v. Alsbury*, 1 A. K. Marsh., 76. It appears to us that the second instruction must have affected the verdict of the jury; otherwise we are unable to understand how they could have arrived at the result they did. As the case must go back for a new trial, it would not be proper for us to express any decided opinion as to the validity of the chattel mortgages, and the *bona fides* of the transactions between Chase and the appellant or his agent, and we will therefore merely say upon the point that we are not satisfied with the verdict, and can only account for it on the supposition that the jury were misled by the irrelevant instruction given. In saying this we do not assent to, neither do we deny, the theoretical soundness of the instruction as a proposition of law. But assuming it to be theoretically sound, it confessedly had no application to the evidence, and we think must have influenced the jury in their finding.

The plaintiff requested the court to charge the jury, in substance, that no evidence had been introduced showing the official character of the defendant at the time he seized the goods on the attachment; but the court held that the fact that it appeared from the evidence that the defendant had served and returned papers in the U. S. district court as deputy marshal, and had been recognized by that court as such, was sufficient proof of his official character. We do not understand the rule to be, that courts take judicial notice of the official character of a deputy marshal (see 1 Greenl. Ev., § 6; *Potter v. Luther*, 3 Johns., 431); and we are inclined to the opinion that the defendant should have produced some further evidence than the fact that he had served papers in the attachment suit, to show that he was deputy mashal when he seized the goods on the

attachment.   But it is not necessary to dwell upon this point, as there must be a new trial for the reasons already given.

The judgment of the circuit court is reversed, and a new trial ordered.

DOWNER, J., having been of counsel, took no part in the decision of this case.