# THE SUPREME COURT

OF

## THE ·STATE OF ·MISSOURI,

### OCTOBER TERM, 1867, AT ST. LOUIS.

[CONTINUED FROM VOL. XLI.]

———•◦•———

HENRY S. TURNER, Respondent, *v.* LEVIN H. BAKER, Appellant.

1. *Instructions.*—Instructions based upon a state of facts not in evidence should not be given.
2. *Instructions—Verdict—Reversal.*—The giving of such instructions, if the jury were thereby manifestly misled in their verdict, will be good ground for the reversal of the cause.

*Appeal from the Circuit, Court of St. Louis County.*

The evidence in this case is very voluminous, embracing a long period of years. But as the decision of the case turns simply upon the action of the court below in giving and refusing instructions in reference to the statutory ten years' limitation of real actions, it is useless to state the facts further than they appear in the opinion of the court. Arguments of counsel are also voluminous, but bear almost wholly upon alleged acts of estoppel *in pais,* which are directly denied in the opinion of the court.

2—VOL. XLII.

*Gantt, Glover & Shepley*, for respondent.

*Hill & Jewett*, for appellant.

HOLMES, Judge, delivered the opinion of the court.

After some study of the whole case, we have come to the conclusion that its determination, as presented on this record, must depend entirely upon the action of the court below in giving and refusing instructions in reference to the ten years' limitation. We shall, therefore, not undertake to review the facts any further than it may be necessary for the purpose of showing the bearing of the points raised and now decided under the statute of limitations.

The suit was an ejectment, commenced on the 11th day of January, 1865. The plaintiff was unable to show any title by deed to any part of the land sued for. His claim of title rested wholly upon an alleged estoppel *in pais*. It is unnecessary to detail the circumstances. It was founded upon acts of ownership and possession of the land, with the acquiescence of the true owner, for a number of years less than the period of the statute bar. This possession, as well as that of the adjoining proprietor on either side, was taken and held under a sheer mistake of the true lines of their respective tracts; and it had wholly ceased somewhere between the years 1842 and 1845. In 1828–9 the ancestors of the defendant had built a fence on what they appear to have supposed to be their western line. About the same time the adjoining proprietor on the west of this possession of the plaintiff's ancestor had erected a fence on what he supposed to be his eastern line. The plaintiff's ancestor supposed his land to lie between them. All parties continued under this mistake until 1845, when the true locations or boundaries were ascertained by accurate survey, made at the instance of the defendant's ancestor. None of them had previously taken the pains to ascertain the true lines by survey. It would appear that the plaintiff's ancestors had knowledge of the correct survey in time to have instituted suit against the adjoining proprietor on

the west of them, for the possession of the land which really belonged to them, before the statute of limitations had become a complete bar; but no suit was instituted. But soon after the discovery of the mistake, the defendant's ancestors set up their claim to the whole land belonging to them by deed, and, on the 12th day of August, 1845, certain intruders, claiming by a title adverse to both of these parties, having entered and taken actual possession of a larger tract, including these premises, and held the possession adversely against them both, the defendant's ancestors instituted legal proceedings in unlawful detainer against them, and recovered judgment, and were formally put in possession by the sheriff, under a writ of possession, on the 22d of October, 1852. The plaintiff's ancestors made no effort to recover the possession thus lost, though it appears that, in 1856, a tenant of theirs had unlawfully entered upon the possession so held by the other party, and asserted an adverse possession, until he was dispossessed by an action of unlawful detainer at the suit of the other: The defendant and those under whom he claims have held the actual possession in conformity with their title by deed ever since 1852, more than ten years before the commencement of this suit. This may be taken as a brief abstract of the facts material to be noticed here.

A proper instruction was given for the defendant, to the effect that such ten years' adverse possession was a bar to the action; but the jury found a verdict for the plaintiff. If this had been all, it would be difficult to comprehend the verdict; for the evidence appears to have been clear and uncontradicted that such adverse possession had existed ever since 1852.

An explanation of the matter may be found in the instructions which were given for the plaintiff. The first one embodied the facts which the evidence was supposed to prove in relation to the matter of an estoppel *in pais*, and added further that if the jury believed "that the said P. and J. G. Lindell knew and acquiesced in said claim and acts of ownership, and set up no claim of their own to said land west of their fence, prior to 1856, then the said P. and J. G. Lindell, and all those claiming under them, are estopped to claim any land to the west of their

said fence, to the injury of the said J. B. C. Lucas and those claiming under him."

There was no evidence before the jury that would warrant the giving of this instruction; thus assuming, as it did, and in effect telling the jury, that the Lindells had set up no claim to the land prior to 1856, or that upon the evidence that was before them they would be authorized to find that such had been the fact. On the contrary, so far as we can discover, the evidence was clear and decisive, and all one way—that they had not only set up a claim, but had held the actual possession of the land ever since 1852, adversely to everybody. Some argument was made upon an alleged uncertainty in the description of the premises, contained in the proceedings in unlawful detainer, and it was denied that it covered this land. This description was such that, taken together with the identification of calls referred to, it did necessarily cover this land and could properly receive no other construction as a matter of law; and it was not a question to be submitted to a jury beyond the mere identification and location of the calls on the ground. Moreover, the proof was positive that, under the writ, the sheriff put the party into the actual possession of this land. We think this instruction, if not otherwise erroneous in itself, was not warranted by the evidence, and was directly calculated to mislead the jury, and it is apparent to us that the jury were actually misled.

We suppose the tenth, eleventh, and twelfth instructions refused for the defendant, relating to this adverse possession since 1852, were refused upon some like grounds; but for similar reasons we think they should have been given. Looking to the case made on the evidence, we are at a loss to discover any good reason why they should not have been given.

Such being the state of the case, there is no occasion to consider the matter of an estoppel *in pais*. The instructions on both sides appear to have laid the principal stress upon this subject, and many authorities have been cited. We shall not enter upon a discussion of it now. It will be apparent, also, that in the view we have taken of this case, as presented upon this record, the decision in Lindell v. McLaughlin (30 Mo. 28) has

no application to the question now determined, nor is there any occasion that we should remark upon the equities or the hardship on either side.

The judgment will be reversed and the cause remanded.    The other judges concur.

Respondent afterward moved the court for a rehearing, on the ground of an alleged misapprehension of facts by the court.

Upon this motion, HOLMES, Judge, delivered the following opinion :

A motion for a rehearing has been filed, insisting that the court had mistaken some of the facts.    We have examined again those facts of the record to which the motion refers ; but the only mistake which we can allow consists merely in this : that the suit against Hannegan was spoken of as an unlawful detainer, when it appears to have been a petition in ejectment.    In the view we take of the case, this difference must be regarded as immaterial. The opposite views of the parties in relation to what land was described in the unlawful detainer against Paynter and others were fully presented in the argument, and our determination of that matter was made upon a careful scrutiny of the whole evidence relating to it.    We find nothing in this motion that ought to change our opinion upon it.    Whatever ambiguity there might be in the call for the *land of Lucas* on the west is made clear enough by the other calls, the measurement from Eleventh street, and the conclusive proof that the plaintiffs in the suit were put in possession of the whole land up to Finney's fence, by the sheriff, under the writ, and that the occupants attorned to them.    It appears, indeed, that Patterson made a lease to Summers on the 20th day of October, 1852 ; but it clearly appears, also, that he was dispossessed by the sheriff, and compelled to attorn to the Lindells on the 22d day of October following, with all the other tenants in possession.

The possession of the Lindells, so acquired, must be regarded as a lawful possession and a complete disseizin of the claimant under Lucas.    The entry of Hannegan upon this possession after-

ward was unlawful, and it makes no difference whether he was disseized by an unlawful detainer, or quit the premises and abandoned his claim of possession after an ejectment suit. The Lindells regained this possession, and continued to hold the premises until the commencement of this suit, and that was enough. The former possession of Lucas was interrupted by these proceedings after the entry of Paynter and others under Clamorgan, and he cannot be heard to allege a continuous possession after 1845 or 1852. The fact that the claimants under Lucas continued to pay taxes, or supposed that they still had possession, amounts to nothing. And if they were barred by the ten years' limitation, it can make no difference whether the previous possession of Lucas, under his claim of title or his acts of ownership and possession, with the acquiescence of the true owner, had continued for twenty years or not. The claim of twenty years' possession depends upon the assumption that that possession continued until 1856. This assumption cannot be allowed upon the evidence contained in this record. There may be room for ingenious argument, but the merits of the case are too clearly with the defendant to admit a question with us.

The motion must, therefore, be overruled; the other judges concurring.