[No. 1873]

# W. R. CUTLER, RESPONDENT, *v.* PITTSBURG SILVER PEAK GOLD MINING COMPANY (A CORPORATION) AND HARRY KEANE, APPELLANTS.

1. TRIAL—INSTRUCTIONS.

   An instruction that if the jury found certain facts it would be their duty to find a verdict for plaintiff in a sum not greater than $15,000 was not objectionable, as charging them that it was their duty to return a verdict for plaintiff in that specific amount.

2. MASTER AND SERVANT — INJURIES TO SERVANT — DANGEROUS PREMISES—INSTRUCTION.

   An instruction that, if plaintiff was in defendant's employ as a carpenter, and while using ordinary care in the discharge of his duty it became necessary for him to tear down a piece of corrugated iron sheeting from defendant's compressor house, and while so engaged, without negligence on his part, he was shocked and burned by a current of electricity which reached him, because of a defect in the insulation of an electric wire and the negligent placing of the wire, then under defendant's control, which broken and defective condition of the insulation of the wire and negligent placing thereof was due to defendant's negligent failure to maintain the wire in a reasonably safe and proper condition, and the same was known or might have been discovered by ordinary care and plaintiff warned of the danger, but defendant negligently failed to make such inspection and warn plaintiff of the danger, and defendant's negligence was the proximate cause of plaintiff's injury, he was entitled to recover was proper.

3. TRIAL—INSTRUCTIONS—CONSIDERATION.

   All instructions should be read in the light of each other and considered in their entirety, when determining whether a portion of the instructions is erroneous, or, by reason of a conflict, or otherwise, is calculated to mislead the jury; and where separate instructions are sound in law, even though they may not be as complete as they might have been, but if read together they are consistent and state correct principles of law, and are not calculated to deceive, they will not be reversible error.

4. APPEAL AND ERROR—RIGHT TO ALLEGE ERROR—PREJUDICE.

   In an action against a corporation and an individual defendant for injuries, the court charged that, if the jury found from the evidence that plaintiff was entitled to recover from the defendant corporation for injuries as alleged, the jury should award plaintiff such damages, not to exceed $15,000, which, in the jury's opinion, would compensate him for the pecuniary damages proximately caused him by the injuries complained of. *Held*, that since the verdict was for plaintiff against both defendants, the corporation could not complain that the instruction referred to it alone, and the individual defendant could not complain, since he was not personally referred to therein.

5. TRIAL—INSTRUCTIONS—INSTRUCTION AS A WHOLE.

Where, in an action for injuries to a servant, the court had specifically referred to the elements of negligence and charged that the jury must find such elements to have existed, and that such negligence was the proximate cause of the injury, before they could return a verdict against defendants, defendants could not complain that another instruction was erroneous, as assuming that plaintiff had been damaged.

6. APPEAL AND ERROR—REVERSAL—INSTRUCTIONS—APPLICABILITY TO ISSUES AND EVIDENCE.

Where instructions are framed, without reference to the issues or evidence, and are calculated to mislead, or are erroneous under the facts and evidence, and prejudicial, they constitute reversible error.

7. TRIAL—INSTRUCTIONS—APPLICABILITY TO ISSUES.

In an action for injuries to a servant while making certain alterations in a building, by being shocked by a high voltage electric wire from which the insulation had been removed, certain instructions given *held* applicable to the issues.

8. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMED RISK.

Where plaintiff, a carpenter, was not injured because of any dangerous place he made for himself in which to work, but by coming in contact with a defective electric wire, negligently maintained by defendant in the place in which defendant was directed to work, the place being already dangerous by reason of defendant's negligence, against which danger plaintiff had not been warned, he cannot be held to have assumed the risk as a matter of law.

9. TRIAL—INSTRUCTIONS—ASSUMED FACTS.

Where plaintiff was injured by coming in contact with a live wire and defendants admitted in answer and evidence that the voltage was at least 440, the court did not err in assuming that the wire carried a current of 440 volts.

10. MASTER AND SERVANT—INJURIES TO SERVANT—ELECTRIC WIRE—INSPECTION.

That a high voltage electric wire strung over a building was intended for a temporary purpose only, did not relieve the defendant from the duty of inspecting it, where it was so strung that workmen would be likely to receive injury from coming in contact therewith.

11. ELECTRICITY—ELECTRIC WIRES—INSPECTION.

Corporations and individuals dealing in the transmission of electricity, or having control of wires conducting electricity, are bound to thoroughly and frequently inspect the wires, to the end that they may, so far as it is within the reasonable power of man, render them safe and see that they are properly insulated and placed.

12. DAMAGES—EXCESSIVENESS—PERSONAL INJURY.

Plaintiff came in contact with a live electric wire negligently maintained by defendant. He suffered the loss of one finger

and electric burns about the hands and shoulder. His fingers were partially stiffened, as was also his arm and shoulder, but they were not shown to have been permanently injured, nor their usefulness even temporarily entirely impaired. *Held,* that a verdict in plaintiff's favor for $15,000 was excessive, and should be reduced to $7,500.

APPEAL from the District Court of the Fifth Judicial District of the State of Nevada, Nye County; *M. R. Averill,* Judge.

Action by W. R. Cutler against the Pittsburg Silver Peak Gold Mining Company and another. Judgment for plaintiff, and defendants appeal. **Reversed on condition.**

The facts sufficiently appear in the opinion.

*L. A. Gibbons* and *Bartlett & Thatcher,* for Appellants.

*Berry & Cole, W. B. Pittman,* and *Summerfield & Curler,* for Respondent:

It is feebly urged by counsel that the damages awarded are excessive. For what reason they so appear to them has not been made clear to us. The record shows conclusively that the plaintiff has sustained permanent injury, and such injury that will not permit him to follow his usual occupation or any occupation requiring equal skill and bodily strength. Counsel remark that he has done some digging since the accident, but they are silent upon the fact that his injuries are such that he has been bereft of the power to guide a nail, thus being unable to discharge one of the more important functions of his trade. It does appear in the record that he can still saw boards, but strange to relate he has not the skill and the strength to nail them in place, and that in no event can he discharge the finer part of his trade appertaining to cabinet work. Besides being permanently disabled, the plaintiff has been permanently disfigured, having suffered the loss of one of his fingers through the accident. Moreover, his arms and back have been stiffened.

Of course, it is an easy matter to speculate upon the amount of damages sustained to a person by such an accident, whose living depends upon the exercise of his

bodily strength, dexterity of movement, and the free use of the members of his body, by us, whose lives are not spent in undue physical exercise, but it seems to us that the only proper persons to pass upon the pecuniary compensation for the injury sustained to the plaintiff were the members of the jury. We can see nothing in their award which is excessive, and no exercise of passion or prejudice in rendering their verdict.

See *Solen* v. *V. & T. R. R. Co.*, 13 Nev. 106; *Wheaton* v. *N. B. & M. Co.*, 36 Cal. 590; *Panama* v. *Phelps*, 101 U. S. 453; Watson on Dam. Per. Injuries, 325–326; *Wedekind* v. *S. P. Co.*, 20 Nev. 292.

In the case of *Engler* v. *W. U. T. Co.*, 69 Fed. 185, a verdict was approved, and afterwards sustained by the United States Circuit Court of Appeals (75 Fed. 102) for $15,000, where the injuries sustained consisted of a compound fracture of the bones of the left ankle, which would always render the ankle lame and stiff, although the plaintiff would be without pain within three months after the trial.

It must be remembered that, in addition to the permanency of the injuries themselves, it was clearly proven that the pain and suffering from the injuries to plaintiff's back will permanently continue, and for which the law allows damages. (*Wedekind* v. *S. P. Co.*, *supra*; *Railroad* v. *Harmon*, 147 U. S. 571; *Engler* v. *W. U. T. Co.*, *supra*; *Taylor* v. *N. C. O. Ry.*, 26 Nev. 415; *Murphy* v. *S. P. Co.*, 31 Nev. 120; *Burch* v. *S. P. Co.*, 32 Nev. 75.)

We submit that the damages were not excessive, and the verdict was not influenced by passion or prejudice.

By the Court, SWEENEY, C. J.:

This action was brought against the above-named defendants to recover the sum of $15,000 damages alleged to have been sustained by the plaintiff whilst an employee of the defendants, by reason of defective insulation of an electric wire caused by defendants' negligence, and the negligent and careless placing of said wire, which electric wire was under the control of defendants in the building

of defendants on which the plaintiff was employed as a carpenter; and for the further sum of $500 for expenses incurred by plaintiff for medical aid and medicine, and for his costs of suit.

The trial came on regularly for hearing at Tonopah, Nevada, before a jury. After the case was submitted, a verdict was returned in favor of the plaintiff in the sum of $15,000. A motion for a new trial was regularly made and denied, and from the order denying defendants' motion for a new trial, an appeal to this court was perfected. The assignments of error we will dispose of in the order in which they are taken.

Appellants first assign as error plaintiff's proposed instruction No. 10, which, as modified and given by the court below, reads as follows: "The court instructs the jury that, if they believe from the evidence that on or about the 14th day of May, A. D. 1908, the plaintiff, W. R. Cutler, was in the employ of the defendant corporation, the Pittsburg Silver Peak Gold Mining Company, as a carpenter, and that while in the discharge of his duty as such carpenter he was then and there using ordinary care and prudence for his safety while so employed, and while in the course of such employment and while in the performance of his duty, it became necessary for him to tear down a certain piece of corrugated iron sheeting from the compressor house of the defendant corporation, and that while thus engaged, and without negligence on his part, he was injured by being shocked and burned by a current of electricity which reached him by reason of a defect in the insulation of an electric wire, and the negligent and careless placing of said wire, then and there under the control of the defendant corporation, which broken and defective condition of the insulation of said wire and which negligent and careless placing of said wire was due to the failure of the defendant corporation to exercise ordinary care to maintain said wire in a reasonably sound and safe condition, and to place said wire in a reasonably safe place, of which broken and defective condition of the insulation of said wire and of which negligent and care-

less placing of said wire the defendant corporation had actual knowledge, or, with the exercise of ordinary care and caution, could have discovered such broken and defective condition of the insulation of said wire, and such careless and negligent placing of said wire, within sufficient time to have repaired the broken and defective insulation and corrected the negligent and careless placing of said wire, or could have warned plaintiff concerning the same, and did not do so, and that said wire was then and there in the possession and under the control of the defendant corporation, and that, in the performance of his duty, and without negligence on his part, and not having had the opportunity of knowing the defect in the insulation of said wire or the negligent and careless placing of the same, the plaintiff was injured, as set forth in his complaint and the amendments thereto, by coming in contact with the current of electricity from said wire, as aforesaid, and that the said defective condition of the insulation of said wire, together with the careless and negligent placing of the same, was the proximate cause of the plaintiff's injury, then I instruct you that it is your duty to find a verdict for the plaintiff in a sum not greater than $15,000."

It is maintained by the appellants that this instruction is reversible error because: "It instructs the jury that, if they find the facts enumerated in the instruction to be true, it is their duty to return a verdict for the plaintiff in the sum of $15,000. It totally ignores the element of damage to the plaintiff, and directs a verdict for plaintiff, notwithstanding the plaintiff may have suffered no damage. It assumes as a matter of fact that the insulation of the electric wire was defective, and that it was negligently and carelessly placed. It instructs the jury that they may find the defendants guilty of negligence other than that alleged in the complaint." With none of these reasons assigned by counsel for appellants are we able to agree, when applied to the instruction in the light of the record, to make the giving of said instruction reversible error. A simple reading of the instruction, we think,

will not sustain the strained interpretation placed on it by appellants' counsel, in support of which they have ingeniously tortured a plausible and interesting, though sophistical, argument.

As we construe the plain and unambiguous language at the end of the instruction, viz, "that it is your duty to find a verdict for the plaintiff in a sum not greater than $15,000," the jury was in no way obligated to find a verdict in this specific amount, but, as specifically stated in the instruction, if the jury find from the evidence the elements making the defendants liable in damages previously stated in the instruction to be true, then it is their duty to find a verdict they may believe proper, ranging from one cent to the limit of $15,000, *but no more.* It plainly appears from the instruction excepted to that the premises therein state all the elements which, if true, would warrant the finding of a verdict for the plaintiff, and legally it would then become the duty of the jury to render a verdict in such amount of damages as they believed to be just and proper under the evidence and instructions of the court. We believe the court very properly stated to the jury the maximum damages they might be allowed to assess, if they found the evidence such that the plaintiff was entitled to a judgment. .

We do not believe that the decisions cited by counsel in support of their contentions, in respect to this assignment of error, are sound, either in law, logic, or reason, or that the rule contended for imperatively commands the jury to bring in a verdict for a specified sum of this kind to be sound. We rather believe the rule enunciated in Cyc., vol. 13, at page 235, to correctly state the law. It reads as follows: "An instruction must limit plaintiff in his recovery to such damages as are the effect of the injury complained of, and is erroneous if based upon evidence offered which is unauthorized by the pleadings. Likewise a refusal to instruct the jury to disregard damages shown by the evidence unauthorized by the pleadings is error. *So, too, regardless of the amount of damages which the evidence submitted to the jury would justify, an*

*instruction which does not clearly limit the recovery of damages to the amount claimed in the petition is erroneous.*"

In volume 6 of Thompson's Commentaries on the Law of Negligence, the rule is laid down as follows: "An instruction that, if the jury find for the plaintiff, they shall award him such damages, not exceeding a specified amount, as they may think, under the testimony of the case, he is entitled to, has been held not subject to the criticism that it indicates that under the issue joined the jury might award damages in excess of the compensatory damages to which he may have proved himself to be entitled." (Thompson's Commentaries on the Law of Negligence, vol. 6, sec. 7281, p. 314.) And again, at page 966 of the same work, it is said: "An instruction telling the jury that they could not award more than the amount demanded in the complaint, and naming this amount, is not erroneous on the ground that it makes the amount demanded unduly prominent."

In Watson on Damages, sec. 321, the author, in referring to the subject-matter under discussion, says: "A charge that the jury may not give the plaintiff more than the amount claimed in his declaration, specifying it, is not objectionable as intimating that the jury should award such amount, or any considerable sum."

Our own supreme court, in the case of *Christensen* v. *Floriston Pulp and Paper Company*, 29 Nev. 571, in recognition of the rule herein sustained, said: "The amount of damage alleged cannot be taken into consideration by the jury in estimating the award, *excepting in so far as it fixes a maximum beyond which the jury may not go.*"

The instruction complained of we do not deem to have prejudiced the rights of the appellants, and is amply sustained by the authorities. In support of our position, see, also, *Stoll* v. *Daly M. Co.*, 19 Utah, 271, 57 Pac. 300; *Smithson* v. *S. P. Co.*, 37 Or. 74, 60 Pac. 914; *Thomas* v. *Gates*, 126 Cal. 8, 58 Pac. 315; *Chicago R. Co* v. *Knerim*, 152 Ill. 458, 39 N. E. 324, 43 Am. St. Rep. 259; *Pennsylvania Company* v. *Paul*, 126 Fed. 160, 62 C. C. A. 135.

Appellants assign as error plaintiff's instruction No.

11, which reads as follows: "The court instructs the jury that, if you find from the evidence that plaintiff, W. R. Cutler, is entitled to recover from defendant the Pittsburg Silver Peak Gold Mining Company for injuries as alleged in the plaintiff's complaint, you are to award the plaintiff such damages not to exceed the sum of fifteen thousand ($15,000) dollars, which, in your opinion, will compensate him for the pecuniary damage proximately caused him by the injuries complained of. In assessing such damage you have the right to consider the following elements as a basis for your assessment: (1) What, before the injury complained of, was the health and physical condition of the plaintiff? (2) What, after the injury, was the health and physical condition of the plaintiff? (3) The loss of earnings of the plaintiff, if any, caused by the injury. (4) The loss of earning capacity of the plaintiff in the future, if any, caused by the injury. (5) The effect, if any, caused by the injury upon the ability of the plaintiff to engage in his usual occupation. (6) The pain and suffering, if there were pain and suffering, endured by the plaintiff as the result of the injury sustained by him, if you find that such injury was sustained. (7) The character of the injury as to being permanent or otherwise, if there was an injury sustained by the plaintiff. (8) The ability of the plaintiff to care for himself before the injury, if there was an injury, as compared with his ability to care for himself after the injury. (9) The age of the plaintiff at the time of the infliction of the injury, if you find the plaintiff suffered an injury. From all of these elements you will resolve what sum will fairly compensate the plaintiff for the injury sustained by him."

Counsel for appellants assign instruction No. 11 as error for the following reasons: "That if it properly presented to the jury the measure of damages, it conflicts with instruction No. 10 previously given. That it instructs the jury only as to what elements of damage it may consider only in case it determines that the plaintiff is entitled to a verdict against the Pittsburg Silver

Peak Gold Mining Company. That it assumes that plain-
tiff has been damaged, and does not require the jury to
find, as a matter of fact, that he has been damaged."

Entertaining the views we do, contrary to the conten-
tions of the appellants that instruction No. 10 is errone-
ous, we cannot say that there is any material conflict in
the instructions complained of. All instructions to a jury
should be read in the light of each other and considered
in their entirety, when determining whether a portion of
the instruction is erroneous, or, by reason of a conflict, or
otherwise, is calculated to mislead the jury; and, where
separate instructions are sound in law, even though
they may not be as complete as they might be made to
be, but if read together they are consistent and state
correct principles of law, and are not calculated to mis-
lead the jury, they will not be disturbed as reversible
error. Of course, where instructions are conflicting and
either is erroneous in law and prejudicial to the rights of
either party, such a conflict in instructions has been
properly held to be reversible error. No such a conflict,
however, in our opinion, exists in the instructions com-
plained of.

It appears to us that the defendant corporation is in no
position to claim that it was prejudiced, in view of the
fact that instruction No. 11 referred to the defendant
corporation alone, because the verdict returned by the
jury is against both defendants; nor, on the other hand,
can the individual defendant be justly heard to complain
of the fact that he was not referred to personally in the
instruction, because the instruction in this respect could
and did not injure him in the least.

Appellants' complaint that instruction No. 11 assumes
that plaintiff has been damaged, and does not require the
jury, as a matter of fact, to find that he has been dam-
aged, fades away in the light of the instructions them-
selves. An examination of both of these instructions
discloses that the court has specifically referred to the
elements of negligence which must be found before a
verdict can be given against the defendants, and the

jury is specifically instructed they must believe from
the evidence that the accident was caused by reason of
defendants' negligence.  Particularly do we believe the
objections of counsel in this respect unwarranted in the
light of the pleadings, which appear to be sustained by
the evidence.

In paragraph 4 of plaintiff's amended complaint, it is
alleged: "*   *   *   Plaintiff was engaged then and there
*   *   *   in removing from one of the buildings of the
defendant corporation at said mine a sheet of corrugated
iron sheeting, through which the wires of an electric
transmission line had been negligently and carelessly
passed by defendants, and in such a negligent and care-
less manner that at the point where said wires passed
through said sheeting they were unprotected at said point
against wearing upon the sharp edges of said sheeting,
and said wires then and there became exposed and were
known so to be by the defendants."  The evidence seems
to amply sustain this averment.  It will be observed from
this allegation that there is not only a direct and positive
averment of the placing of the wires carelessly and negli-
gently, but equally as direct and positive an averment
that the wires were defective, in that "they were unpro-
tected at said point against wearing upon the sharp edges
of said sheeting, and said wires then and there became
exposed and were known so to be by the defendants."
A careful reading of the instructions complained of and
the transcript in the case, we believe, plainly shows that
these instructions conform to the pleadings and the evi-
dence.

The following instructions Nos. 7, 8, and 9 given by the
court to the jury, and reading as follows, are assigned as
error by the appellants:

"The court instructs the jury that a servant of a cor-
poration, or of an individual, does not assume the risk of
his employment resulting from the master's failure to
perform a duty which he owes to the servant.  If the
machinery or appliances, or place of employment provided
by the master for the servant to use and work with, are

dangerous for the servant to use and to work with on account of facts known to the master, or which he could have known by the exercise of ordinary care, it is then the duty of the master to inform the servant of such danger, unless the servant has knowledge of the danger himself, or has had the opportunity of knowing of the danger.

"The court instructs the jury that it is the duty of the defendant company in this case to use ordinary care, diligence and caution in providing for the safety of those in its employ, and in furnishing for their use in their work and employment reasonably safe, sound, and suitable appliances, tools, and machinery, and providing a reasonably safe place in which to work, and in keeping the same in a reasonably safe state of repair; and an employee has the right to assume that appliances, tools, and machinery and the place of employment furnished him by his employer to be used in the course of his employment are reasonably safe, sound and suitable, and that they have been kept in a reasonably safe state of repair. The employer cannot delegate this duty to another and thereby free himself from responsibility.

"The court instructs you that it is the duty of an employer, whether a corporation or an individual, to exercise ordinary care to provide for its employees reasonably safe tools and appliances and a reasonably safe place in which to work. The employee has the right to presume that the employer has fulfilled this obligation. The failure of an employer to exercise the care and diligence of an ordinarily prudent person in providing for its employee reasonably safe tools and appliances and a reasonably safe place in which to work is negligence. Since the servant has the right in the first instance to presume that the master has performed his duty, he may, therefore, without being guilty of contributory negligence, act upon such presumption until he knows, or by the exercise of ordinary care and prudence ought to have known, that such tools and appliances and such place in which to work, so provided by the employer, were not safe."

These instructions are assigned to be erroneous because, as alleged by counsel for appellants, they are: "Entirely inapplicable to the issues made by the pleadings, since the only allegation of negligence is that the electric wires were so carelessly passed through the iron sheeting that the insulation thereon became worn. It is not alleged that any appliance, tool, or machinery furnished the plaintiff was in any way defective, nor does the evidence show any such state of affairs. There is no allegation as to a failure to furnish a safe place in which to work, and the evidence shows that the plaintiff was himself making the place in which he worked, since he was engaged in tearing down an old building. They told the jury that the plaintiff was under no obligation to exercise care in observing any circumstance pointing to danger, and that he had the right to presume that everything was harmless and in good condition."

We quite agree with counsel for the appellants that, where instructions are framed without reference to the issues or evidence, and erroneous under the facts of the case, they should not be given; and, if given, and they prejudice the rights of defendants, it is reversible error. (*C. & A. Ry. Co.* v. *Utley*, 38 Ill. 410; *Parliman* v. *Young*, 2 Dak. 175, 4 N. W. 139, 711; *Stier* v. *City of Oskaloosa*, 41 Iowa, 353; *McNair* v. *Platt*, 46 Ill. 211; *Barrett* v. *Wheeler*, 66 Iowa, 560, 24 N. W. 38; *Knight* v. *Pacific Coast Stage Co.*, 34 Pac. 868.) And also that the judgment will be reversed where instructions given were not warranted by the evidence and which were prejudicial to the substantial rights of one of the other party, or calculated to mislead the jury. (*Case* v. *Illinois Central Ry. Co.*, 38 Iowa, 581; *Turner* v. *Baker*, 42 Mo. 13; *Meredith* v. *Kennard*, 1 Neb. 312; *Lee* v. *Hamilton*, 12 Tex. 413; *Ward* v. *Henry*, 19 Wis. 76, 88 Am. Dec. 672; American Digest, vol. 46, pp. 1621–1626, and cases therein cited.)

The court should never charge a jury upon any matter which is not responsive to the issues in the case. Instructions are given by the court for the purpose of confining the attention of the jury to the issues made

by the pleadings, and to charge them with matters irrelevant to the issues involved simply calculates to mislead the jury and to cause them to consider matters in making up their verdict which are not in issue. An examination of the instructions under consideration, however, will disclose that they are not subject to this criticism. After an examination of the pleadings and the transcript, we believe they are properly responsive to the issues involved.

These complained-of instructions, Nos. 7, 8, and 9, do not seem to be excepted to by counsel for appellants as to either their form or substance, or to the abstract propositions of law therein contained, but rather to their inapplicability, because they are alleged not to be responsive to the issues or the evidence adduced. An examination of the pleadings, which, we believe, are sustained by the evidence, are specifically set forth in paragraphs 3, 4, and 5 of the plaintiff's amended complaint, reading as follows:

" (3) That between the 18th day of April, 1907, and the 17th day of May, 1908, plaintiff was employed by defendant corporation at the Mary mine, about $2\frac{1}{2}$ miles westerly from Blair, Esmeralda County, Nevada; that said mine was, during all of said time, the property of and operated by defendant corporation, and said mine was, together with all electric wire transmission lines, machinery, appurtenances, and buildings used in conjunction with the operation of said mine, at all times herein mentioned, under the exclusive dominion, control, and possession of defendant corporation.

" (4) That on or about the 14th day of May, 1908, at said mine, of defendant corporation, and while plaintiff was in the employ of defendant as aforesaid, plaintiff was engaged then and there under the express direction, order, and instructions of defendant corporation in removing from one of the buildings of defendant corporation at said mine a sheet of corrugated iron sheeting, through which the wires of an electric transmission line had been negligently and carelessly passed by defendants, and in such a negligent and careless manner that at the point

where said wires passed through said sheeting they were unprotected at said point against wearing upon the sharp edges of said sheeting, and said wires then and there became exposed and were known so to be by defendants; that said wires were then and there used by said defendant corporation for the purpose of transmitting a current of electricity of sufficient power to be highly dangerous to life and limb in case it should come in contact with a person, all of which was then and there known by defendants.

" (5) That in consequence of above-alleged acts and omissions of defendants, plaintiff in the performance of his said duties, grasped said sheet in his endeavor to remove the same, as aforesaid, and was severely shocked and burned by the electricity transmitted through said wires, as aforesaid, by reason of the fact that the said wires conducting said electricity, as aforesaid, came in direct contact with said sheeting as a result of the carelessness and neglect of defendants, as above alleged, and without the fault, carelessness, or neglect of the plaintiff; furthermore, in consequence of said acts and omissions of defendants, and of said burns and shock aforesaid, it became necessary to amputate the third finger of plaintiff's left hand, and said finger was, therefore, amputated; furthermore plaintiff's said left hand has become stiff and partially useless to plaintiff; furthermore plaintiff was, as a result of said injury, compelled to and did expend the sum of five hundred dollars ($500) for services and attendance of physicians and surgeons, and for medicine."

If, as alleged, the electricity communicated to the plaintiff through the sheeting which he was removing was carelessly and negligently placed there by the defendants, and the plaintiff was ordered to remove this said sheeting, carelessly and negligently placed there by the defendants, plaintiff was ordered to an unsafe place, and should have been furnished with reasonably safe tools to complete the work or have been informed of the danger of his position, of which it appears in evidence he was not so warned.   We believe that the instructions are

properly within the pleadings and the evidence, as disclosed by the allegations in the complaint and the evidence in the transcript; and where instructions, as those under consideration at present, are founded on evidence which proves or tends to logically prove the averments in the pleadings, that such instructions are sufficient.

Appellants' contention that the instructions are erroneous, because the plaintiff assumed, as a matter of law, in appellants' behalf all risk of the dangerous character of the work or the place in which he worked, because he was making his place of work as he progressed, and that the instructions, as given, were not applicable, is not well taken in view of the fact that the pleadings and the evidence disclosed that the plaintiff was not injured because of any dangerous place he made for himself in which to work, but because the place he was directed to work in by defendants was already dangerous by reason of defendants' negligence, and the dangerous character of the place, which is directly assigned to defendants' carelessness and negligence, was not previously called to plaintiff's attention and warning.

Keasbey on Electric Wires, at page 285, very succinctly lays down the proper doctrine regarding the rules which apply to the liability of those who maintain electric poles and wires to their employees, as follows: "The liability of those who maintain poles and electric wires to persons in their own employ is determined by the general rules governing the relation of master and servant. 'The servant by accepting the employment consents to take the risk of all dangers incident to such employment,' and the master is under a positive duty to take reasonable care and precaution not to subject the servant to other or greater dangers. He must take 'reasonable care to have the tools and appliances with which and the places in and about which the servant is to be employed reasonably safe for the work the latter is employed to do.'" (*Essex Co.* v. *Kelly,* 57 N. J. Law, 100, 29 Atl. 427; *Harrison* v. *Central R. Co.,* 31 N. J. Law, 293; *Hutchinson* v. *Y. N. & B. Ry. Co.,* 5 Excheq. 343; 2 Shear. & Redf. on Neg., 5th

ed., sec. 195; Smith, Master and Servant, sec. 236; *Priestly v. Fowler*, 3 M. & W. 1.)

Appellants' next exception is to instruction No. 12 given by the trial court and duly excepted to, which reads as follows: "You are instructed that electricity is a dangerous force, and when a current of 440 volts of electricity is carried upon electric wires it becomes the duty of the party using, owning, or operating such wires to provide wires which are properly insulated, and to exercise reasonable care to keep such wires in a proper state of insulation. This is a continuing duty, and the inspection of the wires carrying such a current of electricity should be carefully made." Counsel for appellants assign this instruction as erroneous, because it assumes the fact that there were 440 volts of electricity carried over the wire in question, when, as contended by appellants, this was a fact for the jury to determine; and, further, that said instruction is erroneous, because it instructs the jury that it was the duty of the defendants to properly inspect the wires, particularly, as urged by appellants, "the evidence shows that the wires were temporary wires, put up for a few days' use. There is no rule or principle of the law which requires an inspection of the wires under such circumstances."

An examination of the averments of the amended complaint will disclose that the court was warranted in giving this instruction, for the reason the pleadings aver that the electric wire in question was capable of carrying from 440 to 460 volts, and these averments are not denied. It is admitted in the evidence and in the answer of the defendants that the voltage was at least 440 volts. One of the parts of the direct averments in the amended complaint as to this issue reads as follows: "Said wires were then and there used by said corporation for the purpose of transmitting a current of electricity of a sufficient power to be highly dangerous to life and limb in case it should come in contact with a person, all of which was then and there known to the defendants." And in the answer of the defendants, setting up a separate

defense to the amended complaint, it is further in part alleged: "That said wires were of standard insulation and capable of carrying without injury to any one a voltage of from 440 to 460 volts, and that no greater voltage was at any time sent over said wires." It being admitted by the pleadings and in the evidence that the wire in question carried at least 440 volts, appellants cannot be heard to complain in this court of this instruction, because of any assumption of fact involved in said instruction.

Appellants' objection that the defendant corporation was relieved of its legal duty to inspect the wires because the wires were temporary does not impress this court as being well taken. We rather incline to the view that the fact of the wires being temporarily strung and not of a permanent nature, and possibly not placed with that care and foresight as they should have been, or would have been, had they been intended for permanent use and permanently placed, would require the defendant corporation to a more strict and frequent accountability and inspection of the wires than otherwise, before sending an employee to work among the wires so temporarily strung, at the peril of life and limb.

Instruction No. 12, pertaining to the nature, manner, and frequency with which the inspection of the wires should have been made by the defendant corporation, we believe properly covers all these elements which, in our judgment, were properly placed in issue by the pleadings and brought out in the evidence. We can see no error in submitting to the jury, as a matter of law, the duty of defendants, owning or controlling an electric wire dangerous to life and limb, from making an inspection as to the safety of said wire in this age of invention and commercialism, and where this newly discovered, life-destroying element is conveyed through thickly populated communities and thoroughfares into dwellings, mills, and other places of industry where human life and limb are likely to come in contact with the same, it is both just and right that corporations and individuals dealing in the transmission or having control of wires conducting elec-

tricity, that they should be compelled at all times to thoroughly and frequently inspect the wires, to the end that they may at all times, in so far as it is within the reasonable power of man, render them safe and to see that they are properly insulated and placed.

After an examination of defendants' proposed instructions, Nos. 2, 8, and 13, refused to be given by the court, we believe that no prejudicial error was committed against the defendants, for the reason that they are inapplicable to the pleadings and evidence adduced. Further, defendants' rights were covered in other instructions given by the court.

We come now to a consideration of the last and only assignment of error proposed by the appellants in which we find any reversible merit. It is alleged that the damages are excessive, and for this reason the judgment and order denying the motion for a new trial should be reversed.

Sympathy for the injured and respect for the judgment of a jury always prompts us to be as liberal in sustaining a verdict of a jury awarding damages to one injured as is consistent with law, reason, and justice. We have sustained judgments within the past two or three years ranging from $7,500 to $20,000, in individual cases, where it was shown that the injured suffered permanent injuries from which he could not recover, or the loss of limbs or a faculty, and where great suffering was endured and loss of employment and incapacity to work was such that the amount awarded was lawful, reasonable, and just.

In the present case, however, we are of the opinion that the suffering caused by the electric burns about the hands and shoulder of the plaintiff at the time of the accident, and partial stiffening of the fingers, arm, and shoulder, not shown to be permanent, nor the usefulness rendered even temporarily and entirely impaired, and the loss of one finger, would not warrant the jury in imposing a judgment for $15,000 on the defendants, and we deem this amount unjust and excessive.

We have carefully considered the transcript in this

case, which the jury found sustained plaintiff's contentions, and have also given serious consideration to the two separate defenses set up by the defendants and the evidence supporting them, to wit, the alleged contributory negligence on the part of the plaintiff, and the defense which defendants set up in the assumption of the risk which an employee is alleged to submit himself to when voluntarily accepting a position which in itself is dangerous and hazardous, and we believe in the present case that $7,500 should be the limit of the amount of damages to be awarded the plaintiff upon the record as produced before us, and we believe that any sum in excess of this amount would be unjust and excessive. Even this amount of $7,500 is larger than any amount ever allowed for a like injury in this court, and, as indicated by all the authorities in cases where damages have been awarded, an examination will disclose this to be the largest amount ever allowed to stand for so slight injuries as suffered by plaintiff in this cause; but we are constrained to the belief that this amount, considering that the plaintiff will be hampered in the exercise of his trade, and the severe suffering endured by plaintiff resulting from the accident, and under all the evidence in this case, that $7,500, though it might be considered liberal, yet we do not believe it excessive or unjust to allow this amount, if accepted by the plaintiff.

In the following cases these judgments were adjudged excessive and ordered reduced:

$3,500—Young man, loss of fingers, joints permanently injured, reduced to $2,500. *Stiller* v. *Bohn Man. Co.*, 80 Minn. 1, 82 N. W. 981.

$1,800—Boy 8 or 9 years old, amputation of part of two fingers. *Gahagan* v. *Aermotor Co.*, 67 Minn. 252, 69 N. W. 914.

$4,000—Man 25 years old, loss of finger, one finger broken and stiffened, great pain, reduced to $3,000. *Mahood* v. *Pleasant Valley Coal Co.*, 8 Utah, 85, 30 Pac. 149.

$13,000—Man 34 years old, loss of an arm. *Louisville &
N. R. Co.* v. *Lowe* (Ky.) 66 S. W. 736.

$5,000—Laceration of right arm, hand somewhat smal-
ler than other and flexed at wrist joint, cir-
culation impaired, restoration likely, reduced
to $3,000. *Orleans* v. *Perry,* 24 Neb. 831, 40
N. W. 417.

$3,000—Broken fracture of left arm and permanent
impairment, six weeks' medical attendance,
kept from work considerable time, reduced to
$2,500. *Thomas* v. *Consolidated Traction Co.,*
62 N. J. Law, 36, 42 Atl. 1061.

$2,000—Passenger, fracture of arm, disabled two months.
*Watson* v. *Northern R. Co.,* 24 Up. Can. Q. B. 98.

$15,000—Engineer, loss of left hand, reduced to $10,000.
*Texas & C. R. Co.* v. *Hartnett,* 33 Tex. Civ. App.
103, 75 S. W. 809.

$15,000—Employee, loss of right hand, reduced to $10,000.
*O'Donnell* v. *American Sugar Refining Co.,* 41
App. Div. 307, 58 N. Y. Supp. 640.

$15,000—Forty-three years old, earning $60 per month,
injury to hand, usefulness not entirely impaired,
reduced to $2,000. *Bomar* v. *Louisiana R. Co.,*
42 L. A. Ann. 983, 8 South. 478, 9 South. 244.

$5,000—Manager of ranch, fingers stiffened, impairment
of capacity for labor, reduced to $4,000. *San
Antonio R. Co.* v. *Turney,* 33 Tex. Civ. App. 626,
78 S. W. 256.

$5,000—Passenger, ligaments of finger strained, one lung
weakened, time lost one month. *Union Pacific
R. Co.* v. *Hand,* 7 Kan. 380.

$1,100—Injury of finger, $225 for medical expenses,
earning capacity not impaired. *Louisville R.
Co.* v. *O'Mara* (Ky.) 76 S. W. 402, 25 Ky. Law
Rep. 819.

In *Wood* v. *Louisville & N. R. Co.* (C. C.) 88 Fed. 45,
plaintiff, a brakeman, lost one foot and four toes off the
other foot. The jury returned a verdict of $8,000, which

was adjudged excessive and ordered reduced to $4,000. See, also, the following authorities: *Kennon* v. *Gilnor*, 5 Mont. 257, 5 Pac. 847, 51 Am. Rep. 45; *Pfeffer* v. *Buffalo Ry. Co.*, 4 Misc. Rep. 465, 24 N. Y. Supp. 490; *Bailey* v. *Rome Ry. Co.*, 80 Hun, 4, 29 N. Y. Supp. 816; *Tully* v. *N. Y. Steamship Co.*, 10 App. Div. 463, 42 N. Y. Supp. 29; *Peri* v. *N. Y. Central Ry. Co.*, 87 Hun, 499, 34 N. Y. Supp. 1009; *Melse* v. *Alaska Commercial Co.*, 42 Wash. 356, 84 Pac. 1127; *Reynolds* v. *St. Louis Trans. Co.*, 189 Mo. 408, 88 S. W. 50, 107 Am. St. Rep. 360; *Ricker* v. *Central Ry. Co.* (N. J. Supp.) 61 Atl. 89; *Newcomb* v. *N. Y. Central,* 182 Mo. 687, 81 S. W. 1069; *Chicago Ry. Co.* v. *Jackson,* 55 Ill. 492, 8 Am. Rep. 661.

For the foregoing reasons we are of the opinion that the order of the lower court denying defendant's motion for a new trial should be affirmed as to all the assignments of error made, except as to the error assigned that the judgment awarded is excessive, for which error it is ordered that the judgment be reversed and a new trial granted, unless the plaintiff, within twenty days after the receipt of a copy of this opinion and order, file in this court his written consent to a modification of the judgment to $7,500, in lieu of the judgment rendered against the defendants.

In the event such written consent of plaintiff is filed in this court, consenting to a reduction of said judgment to $7,500, it is the order that the judgment of the lower court be modified accordingly, and that the judgment as modified and the order of the lower court denying defendants' motion for a new trial be affirmed, and that respondent be allowed his costs.

It is so ordered.