[Civ. No. 26657. Second Dist., Div. Two. July 3, 1963.]

TROY MORRIS, Plaintiff and Appellant, v. FRANK L. ONEY et al., Defendants and Respondents.

Roger J. Pryor for Plaintiff and Appellant.

Spray, Gould & Bowers and Daniel O. Howard for Defendants and Respondents.

HERNDON, J.—In this action plaintiff, a tenant, sought a recovery of damages from defendants, his landlords, for damages allegedly sustained by him as the result of the malfunctioning of a gas wall heater which had been installed in the leased premises.

Plaintiff appeals from the judgment entered in favor of defendants following a jury trial. We shall summarize the undisputed facts disclosed by our examination of the. record. The rental unit rented and occupied by appellant and his family was one of several separate residential units built by San Antonio Builders for respondents Oney, the owners. Jack B. Stanford, a plumber, had installed a wall heater manufactured by Williams Furnace Company prior to the completion of the building in June of 1958.

The premises involved herein were first rented to other tenants by respondent owners in July of 1958. These initial tenants apparently vacated in November 1958, for the premises had been unoccupied for a month before appellant's wife rented them unfurnished, on a month-to-month basis, on December 20, 1958. Appellant joined his family in the residence in April of 1959.

Sometime during the preceding month, i.e. in March of 1959, appellant's wife had noticed the wall heater smoking and had reported it to respondents, who caused it to be examined and adjusted. Although appellant and his wife had noticed that its flame was yellow and unusually bright, the heater operated thereafter without further difficulty until January 4, 1960, when it began to emit large quantities of smoke and soot which, according to appellant's testimony,

caused the damage to his health and to his furniture and furnishings for which he sought to recover.

As the grounds upon which he seeks a reversal, appellant advances three assignments of error: (1) that the trial court erred in instructing the jury on the doctrine of assumption of risk; (2) that error was committed in the court's refusal to give an instruction on the theory of res ipsa loquitur; and (3) that error was committed in the granting of a nonsuit as to appellant's cause of action based upon an alleged implied warranty of fitness.

██ Although we granted appellant's request to augment the record by ordering the original file transmitted to this court, the augmented record clearly shows that appellant himself foreclosed any right that he might otherwise have had to seek a reversal on the basis of his second and third assignments of error.

The reporter's transcript reveals that following various discussions on the question of the applicability of the doctrine of res ipsa loquitur in the factual context of the instant case, the trial judge indicated his decision not to give an instruction thereon, and stated his reasons therefor. At the conclusion of the court's comments, appellant's counsel stated: "That is right. *Well, I was not going to submit it,* but I thought you might want to read it to see if we complied with the criticism to the *Black* case." (Italics added.)

Thus, it appears that appellant did not in fact submit or request the instruction; therefore it is not before this court for review. ██ "'The refusing of an instruction will not be reviewed by an appellate court unless the record sets forth the requested instruction. [Citation.]'" (*Beane* v. *Los Angeles Transit Lines,* 162 Cal.App.2d 58, 60 [327 P.2d 593].)

Although appellant's complaint appears to have been drawn with an intention to state a cause of action for breach of warranty against the manufacturer of the heater and against respondents also, appellant's pretrial statement, which was incorporated into the pretrial order, lists appellant's contentions as follows: "[T]hat the defendants were negligent in the installation of, and the repairs of the heater, that there was a breach of implied warranty of fitness *on the part of the manufacturer* and that the landlords, defendants Frank L. Oney and Wynona Oney, were negligent in not properly maintaining the heater in a safe condition for their tenants." (Italics added.)

A settlement prior to trial had been concluded between ap-

pellant and the manufacturer. At the close of appellant's case, the plumber, Stanford, who had installed the heater, moved for a nonsuit which was granted. Appellant does not challenge that order. At the same time, *respondents* moved for a nonsuit but their motion was denied. At this juncture there was considerable discussion regarding the question of applicability of the doctrine of implied warranty as against the landlords. Although it appears that the court gave serious consideration to respondents' motion, the record definitely shows that it was denied.

A much more serious question is presented by appellant's remaining assignment of error. Appellant's case as presented to the jury, the two theories above discussed having been eliminated in the manner indicated, turned upon respondent landlords' alleged violation of former section 16905 of the Health and Safety Code. At the time of the occurrence of the operative events involved in this case, said section provided as follows: "Every gas vent, gas water heater, or other gas appliance shall be maintained in good repair."

The foregoing section of the Health and Safety Code undoubtedly imposed upon the landlord the duty therein stated; namely, the duty to maintain in good repair every gas vent, gas water heater, or other gas appliance in his rented premises. This follows from the fact that the section was found in chapter 2 of part 1 of division 13 of the State Housing Act, which declared: "The provisions of this part constitute minimum requirements for the protection, health, and safety of the public and of the occupants of apartment houses, hotels, and dwellings." (Health & Saf. Code, § 15152.)

Hence, in this case, as in *Ewing* v. *Balan*, 168 Cal. App.2d 619, 622 [336 P.2d 561], it is true that "plaintiff was a member of the class for whose benefit section 16905 was enacted," and "the statute imposed upon . . . landlords the duty of maintaining the heater in a reasonably safe condition." But it does not necessarily follow that the duty rests upon the landlord regardless of his knowledge or want of knowledge of a need for making a repair. The common law rule is stated as follows in 51 Corpus Juris Secundum section 371, page 1110:

"Where a landlord is obligated to make repairs during the term, actual or constructive notice of the need for repair is necessary to put him in default on his obligation, unless he agreed to repair without notice, or has actual knowl-

edge, or reasonable opportunity to acquire knowledge, of the defect.'' (See also *McNally* v. *Ward*, 192 Cal.App.2d 871, 884 [14 Cal.Rptr. 260]; *Yazzolino* v. *Jones*, 153 Cal.App.2d 626, 637 [315 P.2d 107]; *Farber* v. *Greenberg*, 98 Cal.App. 675, 682 [277 P. 534]; *Harris* v. *Joffe*, 28 Cal.2d 418, 424 [170 P.2d 454].)

Speaking of a landlord's covenant to repair, Professor Prosser says in his Law of Torts (2d ed.), page 475: ''The jurisdictions which find a tort duty usually construe the lessor's covenant, in the absence of an express provision to the contrary, to mean merely that he must repair only within a reasonable time after he has been notified of the dangerous condition, or has otherwise discovered it.''

██ The instant case deals with a gas wall heater in an unfurnished house rented on a monthly basis without any specific covenant concerning repairs. Exclusive right of possession was vested in the tenant and there was no implied covenant of right of entry by the landlord. He could not enter except by permission; hence, he could not make constant inspections. The tenant would first know of need of repairs and easily could give notice to the landlord. Applied to such a situation the statute (§ 16905) should be construed to carry an implied term that the landlord would be entitled to notice of need of repair, and a reasonable time within which to make it. This follows from sound rules of statutory construction.

██ Statutes are not presumed to alter the common law except to the extent that they expressly so provide. ██ ''The Civil Code was not designed to embody the whole law of private and civil relations, rights, and duties; it is incomplete and partial; and except in those instances where its language clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning a particular subject matter, a section of the code purporting to embody such doctrine or rule will be construed in the light of common-law decisions on the same subject.'' (*Estate of Elizalde*, 182 Cal. 427, 433 [188 P. 560].) ██ The rule is stated as follows in 45 California Jurisprudence 2d section 116, page 625:

''Statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity.'' ██ The court should consider the

consequences that might flow from a particular interpretation (*Estate of Ryan*, 21 Cal.2d 498, 513 [133 P.2d 626]), and where the language is susceptible of two different constructions general phrasing must yield to an intent which is apparent from the act itself. (*Pritchard* v. *Sully-Miller Contracting Co.*, 178 Cal.App.2d 246, 256 [2 Cal.Rptr. 830]; *Farnsworth* v. *Nevada-Cal Management*, 188 Cal.App.2d 382, 387 [10 Cal.Rptr. 531]; *Blumenthal* v. *Larson*, 79 Cal.App. 726, 730, 732 [248 P. 681, 251 P. 241].)

 Although defendants insisted upon a right to notice of need of repairs, the court firmly ruled to the contrary.[1] The court instructed the jury: "Section 16905 of the Health and Safety Code of the State of California which is a part of the State Housing Act, states 'Every gas vent, gas water heater, or other gas appliance shall be maintained in good repair.' Section 16830 of the same Code states: 'Every vent shaft shall be so arranged that it may be readily cleaned.' If you should find from the evidence that the defendants in this action conducted themselves in violation of sections 16905 and 16830 or either of them, as just read to you, you are instructed that such conduct constituted negligence as a matter of law." This was error, in that it failed to recognize and explain the landlords' right to notice. But this error seems not to have entered into the result, for it was not carried into the instructions and the result, a verdict for respondents, disproves any prejudice to either party, and especially to appellant, who never embraced the idea that re-

---

[1] Mr. Aragon (attorney for defendants): "Their only duty, the only reason by which this lady would have any duty at all would be this housing section, 16905, I believe, and there has not been the least bit of evidence here that these people were negligent in the maintenance of this. Every time that they were given notice that anything needed to be done, it was done. THE COURT: Well, I do not think the law requires the giving of notice. I think the law imposes a duty to maintain, regardless of notice. They have the affirmative obligation to go in and investigate and make certain that nothing is required to keep it in good working order, and they are not entitled to sit back. And this landlord has stated that she did not make any investigation. She did not know she was supposed to. And, as a matter of fact, she thinks she thought she was not required to, and that she did not make any investigation until the tenants complained. MR. ARAGON: Well, she said that she went in there and asked how things were going, and asked how everything was. THE COURT: But she did not make periodic inspections, and she did not—— I have forgotten the exact testimony—but she would not go and make an inspection unless the tenant indicated there is something wrong with it. MR. ARAGON: And the tenant had the exclusive, the tenant testified herself that she had the exclusive control of the property and that she and her husband were the ones that operated the thing by themselves, and she is the one that cleans it out."

spondents were entitled to notice of the necessity of repairs as a condition to being obligated to make them.

The uncontradicted evidence indicates that the malfunctioning of the heater which resulted in the damages alleged, was caused by the accumulation of lint in the heater burner, either alone, or in conjunction with a small piece of slag that was found therein. Therefore, the determinative issues in the case were (1) whether the landlords or the tenants had the duty to maintain the heater; and (2) if the duty was that of the landlords, whether they properly could be permitted to invoke the doctrine of assumption of risk.

In *Black* v. *Partridge,* 115 Cal.App.2d 639, 645 [252 P.2d 760], we find the following unqualified statement: "In this state there also is a statutory duty of due care *imposed upon landlords* to maintain such heaters in a reasonably safe condition. Section 16905 of the Health and Safety Code, which is a part of the State Housing Act, *imposes on landlords* the following duty: 'Every gas vent, gas water heater, or other gas appliance shall be maintained in good repair.' Decedent [a tenant paying rent on a weekly basis] was obviously *a member of one of the classes for whose benefit this statute was passed.*" (Italics added.) The decision in *Black* v. *Partridge, supra,* was cited with approval in *Ewing* v. *Balan, supra,* 168 Cal.App.2d 619, 622. In the last-cited decision, at pages 622 and 623, the court further stated:

"The argument that Ewing must be deemed to have assumed the risk is not sustainable. Defendants rely upon the rule that a tenant assumes the risk of damages arising from conditions of the premises that are obvious to ordinary observations. [Citations.] The rule is inapplicable. It is merely a corollary of the common law principle that a landlord is not liable to his tenant for damages resulting from patent defects in the absence of a covenant to repair. [Citations.] As we have pointed out, defendants were required by statute to keep the heater in good repair. And assumption of the risk is not available as a defense to an action based upon the violation of a safety law intended to protect the plaintiff against the very risk which he is said to have assumed. [Citations.]"

In the instant case, the trial judge, relying upon the above quoted holding in *Ewing* v. *Balan, supra,* expressly declined to give respondents' requested jury instructions relating to the doctrine of assumption of risk and advised counsel not to argue this issue. (The instructions expressly refused were

California Jury Instructions, Civil, numbers 207, 207-A, 207-B and 207-C.) Apparently by inadvertence, the trial court did give the following portion of BAJI instruction number 216:

"In considering whether the defendant landlord was guilty of actionable negligence, you must be guided by these rules of law: It is a prospective tenant's duty to make reasonable inspection of premises before he takes possession; and the law holds that he and the members of his household assume the risk of any unsafe condition that comes to his attention or that would come to his attention if he made such an inspection and exercised ordinary care in doing so. Having thus assumed the risk of such a condition, the tenant may not hold the landlord liable for injury resulting from it. Even if it may be said that the landlord was negligent in permitting or creating that condition, such negligence is not actionable. . . . Liability against the landlord arises in a case of his negligence in the making of repairs or improvements only if such negligence creates a latent defect or danger, *known to him and concealed by him from the tenant, a*nd if the tenant suffers injury of which such condition is a proximate cause." (Italics added.)

Since plaintiff's theories of liability resting upon the doctrine of res ipsa loquitur and breach of warranty had been rejected by the trial court, the giving of this instruction on assumption of risk under the circumstances here presented, completely and effectively prevented the jury from considering any theory upon which the respondents might be held liable. Respondents conceded that, other than calling in repair men when the heater first malfunctioned in March of 1959, they had never inspected, or made any attempt to maintain or repair, the heater during appellant's occupancy and did not realize that they were under any duty to do so. Under the above quoted instruction, however, respondents could not be found liable, because having made no inspection of the heater, they obviously did not know of the dangerous condition and therefore could not have concealed it from the tenant.

Such error was clearly prejudicial and section 4½ of article VI of the California Constitution, cited by the trial court in its order denying appellant's motion for a new trial, provides no basis for upholding the judgment. Where either a plaintiff or a defendant is afforded no opportunity

under the instructions given, to have the jury consider his theory of the case, a court may not, under the guise of examining the entire cause, including the evidence, totally eliminate a litigant's right to a jury trial for the purpose of deciding whether or not there has been a miscarriage of justice. (*La Rue* v. *Powell*, 5 Cal.App.2d 439, 440 [42 P.2d 1063], hearing denied by Supreme Court; *Bieser* v. *Davies*, 119 Cal.App. 659, 664 [7 P.2d 388].)

The judgment is reversed.

Ashburn, Acting P. J., concurred.