ANN HORVATH, APPELLANT, v. JERALD BURT, RESPONDENT.

No. 13076

April 30, 1982      643 P.2d 1229

*Gordon W. Rice* and *Goedert & Walraven,* Reno, for Appellant.

*Sala, McAuliffe, Hill & White,* Reno, for Respondents.

---

[4]THE HONORABLE DAVID ZENOFF, Senior Justice, was assigned to participate in this case by the Chief Justice, pursuant to Nev. Const., art. 6, § 19(c), SCR 10.

## OPINION

By the Court, SPRINGER, J.:

Appellant Ann Horvath sought damages from her former landlord Jerald Burt for injuries sustained during a fire in the apartment house where she lived. After a jury verdict in favor of the landlord, Horvath moved for a new trial. The motion was denied. Horvath appeals from the jury verdict and the order denying her motion for a new trial.

Horvath urges that several errors were committed by the trial court. Because we conclude that the trial court committed reversible error by instructing the jury on contributory negligence, we need not consider the other issues presented.

Ordinarily, the existence of contributory negligence is a question of fact; it becomes a question of law when the evidence will support no other inference. Wagon Wheel v. Mavrogan, 78 Nev. 126, 369 P.2d 688 (1962). An examination of the record reveals no evidence to justify a finding of contributory negligence.

Horvath, a woman of 64 years, was awakened in the middle of the night by shouts of warning. She opened the door to the hall and found it to be filled with smoke. A witness testified that there was a "terrific amount of flame" which permitted

"no way of going downstairs at all." Trapped, Horvath broke an outside window and positioned herself outside the building by hanging from the sill with her feet touching an inclined, roof-like projection immediately below her. She subsequently jumped or fell, seriously injuring herself.

Respondent claims that the facts establish that Horvath's negligence contributed to her injuries. This contention is based on the testimony of a police officer who assisted at the fire. Respondent argues that the police officer had told Horvath to wait, and that had she done so, she would have been rescued without injury. Respondent's position, apparently, is that Horvath had a duty to hold onto the wet sill a little longer than she did.

An examination of Officer Cordella's testimony does not support any inference of negligence on the part of Mrs. Horvath. Cordella never identified Horvath; furthermore, there is no indication that he specifically warned her or that, if warned, she heard the warning. Cordella testified that he saw some people in the window of the northeast corner of the building. The building was engulfed in fire, and the people in the window were screaming for help. Cordella yelled to the people to wait for help since the fire department was nearby. He then ran to another part of the yard, and in five or ten seconds, he returned with a ladder which he used to help people exit. It was only after returning with the ladder that he noticed a woman lying on the ground. The foregoing testimony at best merely indicates that Cordella had the good fortune to find a ladder; and that discovery, coupled with his quick response, prevented others in the building from having to jump or fall.

Under the circumstances of this case, we cannot find that the giving of an instruction on contributory negligence was harmless. There is certainly evidence in this case from which a jury could reasonably have concluded that respondent's failure to inspect the wiring was either common law negligence or negligence *per se.* We must therefore conclude that appellant was prejudiced by the giving of the improper instruction.

NRS 118A.290 imposes a duty on landlords to maintain the electrical wiring and equipment of a dwelling unit in safe condition.[1] The statute was clearly designed to protect a class of persons which included appellant; and the injury resulting from an attempt to escape the fire may reasonably be said to fall within the risk of harm contemplated in the statute. *See* W. Prosser,

---

[1]NRS 118A.290  Habitability of dwelling unit.
1.  The landlord shall at all times during the tenancy maintain the

Law of Torts 200 (4th ed. 1971). Respondent claims that he was under no duty to inspect or repair the wiring since it was located in an inconvenient place under the building. We do not find this argument persuasive. Respondent was aware that the wiring in the lower portion of the building was approximately seventy-five years old. That fact alone may be sufficient to infer that respondent had notice. Electricity is a highly dangerous force, and the risks involved in its use may place a duty of inspection upon the party having control of the premises. Cutler v. P.S.P.M. Co., 34 Nev. 45 (1911).[2] Moreover, the age of the wiring in the immediate case underscores the importance of inspection. *Cf.* Leavitt v. Glick Realty Corp., 285 N.E.2d 786 (Mass. 1972) (failure to inspect electrical wiring over a period of twenty-seven years held evidence of negligence). There was, however, even more direct evidence that respondent was aware of the dangerous condition. The tenants had made numerous complaints to the management concerning frequent power outages and blown fuses. Respondent conceded at trial that he was aware of at least some of these complaints. To say that under these facts respondent was relieved of his legal duty merely because it would be inconvenient to inspect or repair the wiring would be to vitiate the objective of the statute.

Since appellant may reasonably argue that a different result might have obtained in the absence of the erroneous instruction, reversal is warranted. *See* Driscoll v. Erreguible, 87 Nev. 97, 102, 482 P.2d 291, 295 (1971).

The judgment of the trial court and order denying appellant's motion for a new trial are therefore reversed.

---

dwelling unit in a habitable condition. A dwelling unit is not habitable if it substantially lacks:

     \* \* \*

(e) Electrical lighting, outlets, wiring and electrical equipment which conformed to applicable law when installed and are maintained in good working order.

[2] In *Cutler,* a decision which was essentially contemporaneous with the time of the electrical wiring in the immediate case, this court said,

> We can see no error in submitting to the jury, as a matter of law, the duty of defendants, owning or controlling an electric wire dangerous to life and limb, [to make] an inspection as to the safety of said wire in this age . . . where this newly discovered, life-destroying element is conveyed . . . into dwellings . . . it is both just and right that corporations and individuals . . . having control of wires conducting electricity . . . should be compelled at all times to thoroughly and frequently inspect the wires, to the end that they may at all times, in so far as it is within the reasonable power of man, render them safe. . . .

*Id.* at 62-63.

GUNDERSON, C. J., MANOUKIAN, J., and ZENOFF, SR. J.,[3] concur.

MOWBRAY, J., dissenting:

Respectfully, I dissent. Horvath seeks reversal principally on the grounds that the district judge erred in instructing the jury on (1) the landlord's duty to repair the premises and (2) in giving the jury a contributory negligence instruction. In my opinion, the court did not commit reversible error.

1.   Horvath claimed that a landlord's liability for injuries sustained by tenants due to defects in the leased premises should be predicated on strict liability rather than negligence. The trial judge rejected the strict liability theory and instructed the jury that the landlord's liability was predicated on negligence. It is the rule that liability is imposed only when the landlord has notice of the defect and an opportunity to correct it, or failed to exercise ordinary care in inspecting for defects. Morris v. Oney, 32 Cal.Rptr. 88 (Ct.App. 1963); Henderson v. W. C. Haas Realty Management, Inc., 561 S.W.2d 382 (Mo.App. 1977); Sheehan v. 535 North Water Street, 67 N.W.2d 273 (Wis. 1954). The court properly instructed the jury on the duty to repair.

2.   As the majority opinion points out, the existence of contributory negligence is a question of fact. It becomes a question of law only when the evidence will support no other inference. Wagon Wheel v. Mavrogan, 78 Nev. 126, 128, 369 P.2d 688 (1962); Carter v. City of Fallon, 54 Nev. 195, 201, 11 P.2d 817 (1932).

Officer Cordella testified that he arrived early at the scene of the fire and shouted to the tenants in the upper story windows not to jump because the fire trucks were only a half a block away. When he returned seconds later with a ladder, the other tenants were rescued safely, but Horvath had already jumped.[1]

---

[3]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case in place of THE HONORABLE CAMERON BATJER. Nev. Const., art. 6 § 19; SCR 10.

[1]Officer Cordella testified as follows:

MR. HILL:   Okay. When you ran towards the home, did you have an opportunity to observe some people in the window on the northeast corner of the building?

OFFICER CORDELLA:   I did.

MR. HILL:   Okay. And did you shout any instruction to those people in the windows?

OFFICER CORDELLA:   Upon my arrival, I noted the entire structure to be engulfed. The people in the corner of the building were screaming for help and—

MR. HILL:   What did you tell them?

OFFICER CORDELLA:   I advised to the best of my memory— I didn't make any notes at the time—for the people to wait, we were

He did not at the time identify Horvath but she apparently was the only tenant who jumped. Horvath testified that while she was still standing in her apartment she saw an officer go by looking for a ladder and that she knew that if she jumped she would be injured.

The issue is not, as the majority opinion frames it, whether the evidence clearly shows that Officer Cordella positively identified Horvath in the window, or specifically warned her not to jump. The issue is whether the evidence could support a reasonable inference in the mind of a juror that Horvath, having been warned, jumped unnecessarily and thus contributed to her own injuries. The evidence supports such an inference.

The district court adequately instructed the jury that one in imminent peril is not held to the same standard of reasonable care as one acting under normal conditions.[2] The fact that Horvath was frightened and under great stress does not make the giving of the contributory negligence instruction erroneous.[3]

---

going to get help, that the Fire Department was less than half a block away.

MR. HILL: And what did you do after that?

OFFICER CORDELLA: I headed towards the rear of the building looking for a ladder or something for the people to exit the building with.

MR. HILL: And did you, in fact, find a ladder?

OFFICER CORDELLA: Yes, I did.

MR. HILL: And did you return with it to that scene?

OFFICER CORDELLA: I found a ladder laying in the back on the grass. I picked it up, ran towards the front, leaned it up against the building and people began coming down.

MR. HILL: And how long did it take you to get from the area where the people were yelling for help to the back part of the building and back up in front?

OFFICER CORDELLA: Close estimate of five to ten seconds.

MR. HILL: And at that time did you happen to notice an older woman on the ground at that time?

OFFICER CORDELLA: I believe while going through, I did not, but upon coming back with the ladder, I did.

MR. HILL: So if I understand your testimony, she was not on the ground when you yelled up that help was coming. Ten seconds later you returned with the ladder and at that time she was on the ground.

OFFICER CORDELLA: Yes.

[2]Instruction No. 16:

Where one without fault of his own is placed in a position of great mental stress or sudden emergency, the same degree of judgment and care is not required of him as is required of one who is acting under normal conditions. The test to be applied is whether or not the person in such a position of great mental stress or sudden emergency did or attempted to do what a reasonably careful person would have done under the same or similar circumstances.

[3]It appears that the jury's verdict was predicated on a finding that the landlord was not negligent, not on a finding of contributory negligence.

Horvath has suffered a tragic accident. However, she was given a fair opportunity to present her case to a jury. The jury found against her. No reversible error occurred at the trial. I would affirm the judgment of the district court.

---

Just prior to reaching the defense verdict, the jury requested additional instructions defining "reasonable inspection." This suggests that the jury was more concerned with the landlord's duty than with Horvath's contributory negligence.