COUNTY OF CLARK, a Political Subdivision of the State of Nevada, on Relation of Las Vegas Convention and Visitors Authority, Appellant, *v.* BRIANT BUCKWALTER; JOHN R. REESE; CALIFORNIA FEDERAL SAVINGS AND LOAN ASSOCIATION, a California Corporation; TOWER ENTERPRISES, a Partnership; Profit Sharing Plan of ROY R. VALENTINE, D.D.S., a Professional Corporation; K.W. HOUNSELL; K.W. HOUNSELL, INC., a Profit Sharing Trust; Profit Sharing Plan of EDGAR F. MUNCSH, D.D.S., a Professional Corporation; RALPH W. ENGH and CHRISTINE J. ENGH, Husband and Wife, Respondents.

No. 29477

April 9, 1999                                    974 P.2d 1162

[Rehearing denied October 1, 1999]

*Dickerson, Dickerson, Consul & Pocker* and *Luke Puschnig,* Las Vegas; *Stewart L. Bell,* District Attorney, and *Dale E. Haley,* Deputy District Attorney, Clark County, for Appellant.

*Law Offices of Kermit L. Waters* and *Laura Wightman FitzSimmons,* Las Vegas, for Respondents.

Before ROSE, C. J., YOUNG, MAUPIN and SHEARING, JJ.

## OPINION

By the Court, ROSE, C. J.:

Appellant Clark County (the "county"), acting on behalf of the Las Vegas Convention Authority, filed a condemnation action seeking two parcels of property located across from the Las Vegas Convention Center (the "property"). The property was owned by Briant Buckwalter, John R. Reese, and several others (the "landowners").

Prior to trial, the landowners filed a motion to define fair market value as the "highest price" the property would bring on the open market. The district court granted this motion, instructing the jury to award the "highest price," despite the fact that the legislature in amending NRS 37.009 had defined fair market value as the "most probable" price.

After an eight-day trial, a jury found that just compensation for the property was $9,000,000.00. The county appeals, in part, because it alleges that the district court committed reversible error by giving the jury the "highest price" instruction. We agree, and for the reasons set forth below, we reverse the district court's judgment and order and remand for a new trial.

### FACTS

In the early 1980s, the landowners formed a partnership and purchased the property, which consisted of two parcels near the Las Vegas Convention Center. Although the property housed apartment buildings, it was zoned for commercial use, to include retail, food and beverage, or gaming facilities.

In September 1993, the county adopted a resolution of "need and necessity" announcing its intention to condemn the property for expansion of the Las Vegas Convention Center. After a period of unsuccessful negotiations concerning the fair market value of the property, in April 1994, the county filed a condemnation action against the landowners in Clark County district court. Approximately one month later, the county gained the right of

immediate occupancy of the property. After rejecting the landowners' offer of judgment of $4,850,000.00, the parties prepared for trial.

Prior to trial, the district court held several hearings on the parties' motions in limine, including the landowners' motion to define fair market value. In this motion, the landowners argued that the fair market value of the property should be defined as the "highest price" the property would bring on the open market. The landowners further argued that the legislature's enactment of NRS 37.009, defining fair market value as the "most probable price," was unconstitutional as a violation of the separation of powers because the legislature had no authority to deflate just compensation. In contrast, the county argued that fair market value should be defined as the "most probable price" the property would bring on an open market pursuant to NRS 37.009. The district court granted the landowners' motion, adopting the "highest price" definition of fair market value.

On April 8, 1996, the matter proceeded to trial. Each party presented experts who testified on the market value of the property. The landowners' experts testified that the "highest price" of the property was between $9,017,000.00 and $9,769,000.00, while the county's expert testified that the "most probable price" of the property was $4,560,000.00.

After an eight-day trial, the jury determined by special verdict that the just compensation for the property was $9,000,000.00 as of April 26, 1994, and $9,769,000.00 as of April 8, 1996. The district court then concluded that April 26, 1994, was the appropriate valuation date and awarded the landowners $9,000,000.00.

On May 13, 1996, the county filed a motion for a new trial. In a post-trial hearing following the denial of the county's motion for a new trial, the district court stated that the "highest price" definition of fair market value was "the one legal issue that we [the county] really ha[d] in arguing before . . . the Nevada Supreme Court." Thereafter, the county filed this timely appeal.

## DISCUSSION

The county argues that the district court committed reversible error by giving the jury an erroneous instruction on the definition of fair market value.[1] Specifically, the county contends that jury

[1]The county further argues that reversal is warranted because the district court erroneously: (1) required testimony on two different valuation dates; (2) admitted into evidence the landowners' "highest and best use" of the property; (3) permitted the landowners to reopen their case-in-chief; (4) excluded evidence regarding the landowners' opinions of the property's value; (5) excluded evidence regarding the 1984 and 1988 purchase prices of the property; and (6) refused to allow the county to present rebuttal evidence. Having

instruction no. 12[2] was erroneous because the "highest price" standard, which the district court adopted from Wheeler v. State, Department of Transportation, 105 Nev. 217, 773 P.2d 728 (1989), had been specifically disapproved by the legislature in 1993 when it amended NRS 37.009. We agree. Moreover, to the extent that NRS 37.009(6) contradicts *Wheeler*, we explicitly overrule *Wheeler* on this issue.

In 1993, the legislature amended NRS 37.009[3] mandating that the "most probable price" standard[4] be used to define fair market value in condemnation actions. *See* NRS 37.009(6); Hearing on A.B. 80 Before the Assembly Comm. on Judiciary, 67th Leg. (Nev., Mar. 29, 1993). This amendment was intended to supersede this court's decision in *Wheeler* and prohibit the use of the "highest price" standard to define fair market value in condemnation actions. *See id.*

In the case at bar, the district court blatantly ignored this legislative directive by adopting the "highest price" definition in *Wheeler* because it found that the 1993 amendment to NRS 37.009 was an unconstitutional exercise of the legislature's authority. The district court erred in making this finding.

### NRS 37.009 is constitutional

This court has held that the right to just compensation for private property is a right guaranteed by the United States and

---

reviewed the record and having had the benefit of oral argument of counsel, we conclude that the county's arguments lack merit because although errors were committed by the district court, these errors were harmless as they did not affect the substantial rights of the parties. *See* NRCP 61.

[2]The district court gave the following jury instruction defining market value:

> The fair market value of property is *the highest price on the date of valuation* that would be agreed to by a seller who is willing to sell, but who is under no particular or urgent necessity for so doing, and who is not obligated to sell, and a buyer who is ready, willing, and able to buy, but who is under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.

(emphasis added).

[3]NRS 37.009(6) provides, in relevant part, that:

> *"Value"* means the most probable price which a property would bring in *a* competitive and open market under the conditions of a fair sale, without the price being affected by undue stimulus, whereby the sale is consummated on a specified date and the title to the property is passed from the seller to the buyer . . . .

(emphasis added).

[4]The "most probable price" standard was adopted from the federal definition of fair market value in condemnation actions. *See* 12 C.F.R. § 34.42 (1998).

Nevada Constitutions that cannot be impaired by statute. *Alper v. Clark County*, 93 Nev. 569, 571 P.2d 810 (1977). Moreover, this court has held that the determination of just compensation is exclusively a judicial function. *Clark County v. Alper*, 100 Nev. 382, 394, 685 P.2d 943, 951 (1984). These holdings, however, do not support the proposition that the legislature lacks authority to make laws in the area of eminent domain. Indeed, the legislature, as the law-making body of the state of Nevada, has such authority provided it acts within constitutional limits. *See* Galloway v. Truesdell, 83 Nev. 13, 422 P.2d 237 (1967). We see nothing unconstitutional in requiring that landowners receive the "most probable price" as just compensation for their land. Accordingly, we conclude that NRS 37.009 is a constitutional exercise of the legislature's authority, and that the district court erred in concluding otherwise.

*The district court's error was not harmless*

The landowners argue the district court's erroneous instruction was harmless error because the "highest price" as set forth in *Wheeler* and the "most probable" price pursuant to NRS 37.009 are synonymous. We disagree. We conclude that these two terms have different meanings, and that the district court committed reversible error by giving the "highest price" instruction because it likely affected the jury's verdict. *See* Horvath v. Burt, 98 Nev. 186, 643 P.2d 1229 (1982) (reversal is warranted where a different result might have been obtained in the absence of the erroneous instruction).

First, there is a clear distinction in the plain meaning of the terms "most probable" and "highest" price. "Probable" price is defined as the price "likely to occur or be; that can reasonably but not certainly be expected." *Webster's New World Dictionary* 1072 (3d ed. 1988). The "highest" price is defined as "greater in size, amount, degree, power or intensity etc. than usual." *Id.* at 636. These definitions are far from synonymous. A hypothetical exemplifies this difference: one person appraises a piece of land at $1000.00, while five others value the land at $800.00. Based on these appraisals, the highest price of the land is not the same as the most probable price because the highest appraisal is $200.00 more than the "most probable" or likely appraisal value of $800.00. Thus, the plain meaning of "most probable" and "highest" supports the proposition that these terms are different.

Second, even if this difference were somehow ambiguous, this court has held that it will presume a substantial change in the law when a statute is amended to change a definition previously used. *See* Clark County v. State, Equal Rights Comm'n, 107 Nev. 489, 491, 813 P.2d 1006, 1007 (1991). With regard to NRS 37.009,

the legislature amended this statute to change the definition of fair market value from "highest price" to the "most probable price." Because a statute was amended to change a definition previously used, this court will presume a substantial change. Accordingly, the "most probable" price is a substantial change from the "highest price," and thus the terms are not synonymous.

Third, in the case at bar, there was a manifest practical difference between the "most probable" price and "highest price" because the incorporation of the "highest price" standard resulted in a vast $5,000,000.00 disparity in the value of the property. The landowners' experts testified that the "highest price" of the land was between $9,017,000.00 and $9,769,000.00, based in part on their evaluation of the "highest and best use" of the land as a hotel casino. In contrast, the county's expert testified that the "most probable price" of the land was $4,560,000.00, based in part on his evaluation of the land's "most probable" use as a retail/restaurant facility. Moreover, the county's expert testified that it was not probable that a casino would be built on the land based on the small size of the parcel and an economic feasibility analysis that suggested the parcel was ill-suited for a casino. Using the "highest price" instruction probably cost the taxpayers more than $5,000,000.00 in this case because the landowners' valuation was based on a casino being built on the property, a scenario that was not probable. Thus, because of the $5,000,000.00 disparity in valuation of the property resulting, in part, from the use of the "highest price" instead of the "most probable price" standard, we conclude that the terms are not synonymous.

Fourth, the district court itself noted a manifest practical difference between the "highest price" and "most probable price" when it stated on the record that the "highest price" jury instruction affected the jury's verdict. Moreover, the district court noted its own error when it stated on the record that the county had a valid issue to argue before this court, and if the district court had this case to try again, it would have allowed the "most probable price" instruction in a split verdict format. Thus, even the district court recognized a distinction between the two instructions and the fact that the terms were not synonymous.

Finally, the legislative history of NRS 37.009 supports our conclusion that the "highest price" and the "most probable price" are not synonymous. The legislature's rationale for eradicating the use of the "highest price" standard was to prevent misuse and abuse that occurred when:

> attorneys for condemnees, and their specially selected expert witnesses, . . . *used the phrase 'highest price' to encourage jurors to speculate in terms of the highest price conceivable, however improbable.* The resultant findings of value [by spec-

ulating juries were] out of touch with the existing market and reality.

Hearing on A.B. 80 Before the Assembly Comm. on Judiciary, 67th Leg. at Ex. E (Nev., Jan. 29, 1993) (emphasis added).

In the case at bar, the landowners misused and abused the "highest price" instruction in their closing argument to justify the five million-dollar difference in value when they argued:

> Ladies and gentlemen, what I'd like to talk to you about, if I could for a second, is when you look at Mr. Morse's appraisal [Clark County's expert] you are going to find, among other things, that he didn't use this highest price definition as the court has told you. And I told you in the opening statement that it would be the highest price. He used the most probable price.
>
> *Now, ladies and gentlemen, you don't need to be a rocket scientist to know that those two words have a different meaning, most probable and highest.* And he says, "Oh, they're the same thing to me." Do you believe that? I don't believe that.
>
> It's more probable that somebody would have $100 to pay for a piece of property than it would be for somebody for [sic] have $1,000.00. There would be more people that could do that. And so that's their way [Appellant Clark County] of coming down to this $5 million. That's one of their ways of doing it by using the term "most probable."

(emphasis added). In other words, the landowners used the distinction in meaning between the "highest price" and the "most probable price" standard to justify the $5,000,000.00 difference in the appraisals of the land and advocate for the higher price.[5] Ironically, the landowners' closing argument exemplifies the exact type of misuse and abuse of the *Wheeler* instruction that the legislature was trying to eradicate by changing the law.

In sum, we conclude that the county was entitled to have the jury properly instructed on NRS 37.009—that the fair market value of the property was the "most probable price." *See* Beattie v. Thomas, 99 Nev. 579, 583, 668 P.2d 268, 271 (1983) (a party is entitled to have the jury instructed on the law applicable to each claim). Therefore, the district court erred in giving the "highest price" instruction to the jury because this instruction was con-

---

[5]We note that at the district court level the landowners argued that the two standards, "highest price" and "most probable price," were very different. On appeal, however, the landowners argue that the two standards are synonymous. This court, however, has often said that a party cannot *change* positions from that asserted before the district court. *See* Powers v. Powers, 105 Nev. 514, 516, 779 P.2d 91, 92 (1989); Tupper v. Kroc, 88 Nev. 146, 151, 494 P.2d 1275, 1278 (1972).

trary to NRS 37.009. The district court's error warrants reversal because the erroneous instruction likely yielded a different, inflated verdict that would likely not have been awarded had the most probable price instruction been used.

Accordingly, we reverse the district court's judgment and order and remand this case for a new trial where the "most probable price" instruction is given, as required by law.[6]

YOUNG and SHEARING, JJ., concur.

MAUPIN, J., concurring:

I concur in the majority's result, albeit for alternate reasons.

Respondent's contention that NRS 37.009 is unconstitutional lacks merit. The state legislature is within its authority to enact legislation and to amend or repeal its statutory law unless the legislative action is specifically precluded by constitutional limitations. Moreover, "statutes are to be construed in favor of the legislative power." Galloway v. Truesdell, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967) (citing In the Matter of Platz, 60 Nev. 296, 108 P.2d 858 (1940)). As the Nevada Constitution does not preclude this legislation, the presumption of legislative authority prevails. Here, the legislation simply provides a reasonable definition of the scope of recovery in condemnation actions. Although it may be argued that the legislature's statement of public policy on these issues should be revisited, that policy is rationally based for the purposes of constitutional analysis. Any contention with this legislative policy should be addressed to the legislature.

Thus, I agree with the majority that the trial court was wrong in its conclusion that NRS 37.009 is unconstitutional. I depart from the majority in its conclusion that NRS 37.009 effects a legislative repealer of Wheeler v. State, Department of Transportation, 105 Nev. 217, 773 P.2d 728 (1989). Although the enactment of NRS 37.009 was intended to do just that, the language chosen by the legislature does not effect this purpose. The statute mimics the *Wheeler* holding, only changing the term "highest price" to "most probable price." Contrary to the majority, I conclude that the terms are synonymous.[1] Thus, the jury should have been given two instructions on fair market value, one containing the statutory language, and a second defining most probable price as the "highest price" on the date of valuation that

---

[6]This matter was submitted for decision prior to expansion of the court from five to seven justices on January 4, 1999; only those justices remaining on the court who previously heard this matter participated in the decision.

[1]Appellant's own expert witness/appraiser testified that the value of the property would be the same under either the "most probable price" standard or the "highest price" standard. During trial, the following exchange occurred between the County's lawyer, Dale Haley ("Haley"), and the County's appraiser, Tim Morse ("Morse"):

would be agreed to by a willing seller and a motivated buyer under normal market conditions. Here, the instruction given by the trial court would have, in my view, been appropriate if accompanied by the statutory language.

I take this position because the industry, that is persons in the business of appraising real estate, do not seem to regard the terms "highest price" and "most probable price" as comprising anything other than a distinction without a difference. *See* note 1. This was certainly the case with regard to the appraiser's testimony in *Wheeler,* and with regard to the county's appraiser below.

The problem at trial was created by the failure to instruct on the statute and, later, the forensic approach taken during closing argument with regard to the instruction's definition of fair market value by counsel for the landowners. Counsel did argue that it would not take a "rocket scientist" to tell the manifest difference between the terms used in the statute and the terms used in the instruction. Given the trial court's incomplete definition of fair market value, counsel's rhetoric comparing that definition with the testimony of the county's expert was not improper. Had the jury been properly instructed, the argument would have been in conflict with the legal doctrine presented to the jury.

Here, the landowners successfully fought for an instruction defining fair market value that did not include the statutory language and then attempted to draw a distinction between "highest price" and "most probable price." This strategy, which is at odds

---

Haley: Could you also give your definition of fair market value . . . ?

Morse: Yes. Market value definition. . . . That is—it's the most probable price which a property would bring in an open and competitive market under all conditions to a fair sale without the price being affected by undue stimulus whereby the sale is consummated on a specific date and the title to the property is passed from the seller to buyer under the following conditions: That the buyer and seller are acting prudently and knowledgeably, that the buyer and seller are typically motivated, that the buyer and seller are well informed.

Also, that there's a reasonable period of time to allow the property for exposure to the open market, and that payment is made in U.S. Dollars in cash. Or other precisely related terms similar to cash, and that the sale price represented the normal consideration for the property and there are no special or creative type financing or other concessions that would be granted in the price.

Haley: Have you ever heard the term highest price used in relation to fair market value definition? Have you ever heard of that being used?

Morse: Yes.

Haley: Does it make any difference whether you use most probable price or highest price in your analysis?

Morse: No. It makes no differences in my opinion.

Haley: Does the most probable price result in the highest price?

Morse: Yes, it does.

Haley: That's how the market operates; is that correct?

Morse: Yes, it does.

with the views stated in this separate opinion, was made more feasible because the county's appraiser used the statutory language in forming his opinion, although being of the further opinion that the two terms were synonymous.

The trial court's adoption of the landowners' position with regard to fair market value enabled the landowners to employ the above strategy. However, the "rocket scientist" argument improperly expanded upon the "highest price" instruction that was given. Had the landowners' closing argument been premised on the assumption that the terms "highest" and "most probable" were synonymous, the failure to instruct on the statute would arguably have been harmless error. Thus, it was the instruction and the arguments made in connection with the instruction that form the need for a second trial below.

While counsel's final argument demonstrates an attempt to draw a distinction between the "highest price" and "most probable price" in this context, the appraisal industry does not draw such a distinction. If juries are instructed as I suggest, and if jury arguments are kept consistent with the instructions, just compensation to all parties will be realized. For example, on re-trial, the county will certainly be free to argue that the most probable price for the subject property based upon its highest and best use should not include speculative casino development.[2]

The trial court's ruling on this issue, which facilitated the tactical approach of counsel during closing argument, compels reversal. *See* Horvath v. Burt, 98 Nev. 186, 643 P.2d 1229 (1982) (reversal is warranted where different result might have been obtained in the absence of the erroneous instruction).[3]

---

[2]The majority hypothesizes that, under the instruction given by the trial court, a single appraisal of $1000 would have to be accepted on valuation against five appraisals of $800 based upon the "most probable price." While such is not the inevitable result of the instruction, protection against this interpretation would be in place if condemnation juries are instructed as I suggest.

[3]With regard to the other assignment of errors mentioned in note 1 of the majority opinion, I do have some individual comments. First, under no circumstances should the jury have been required to find two sets of damage figures based upon two different valuation dates. This case went to trial within the two-year period provided under NRS 37.120. While the trial court clearly erred in this regard, this error was harmless. Second, while exclusion of the evidence of the original purchase price paid by the landowners may have been within the court's discretion, this was certainly a close call under these circumstances. Its probative value as to a current valuation would easily have been dealt with on cross-examination of the experts. Third, the exclusion of the landowners' views on valuation stated in correspondence between counsel was certainly proper because the letters were part and parcel of settlement negotiations.