Young, J.,
dissenting:
The issue is whether Nicholas and Craddock obtained vested rights to a 300 percent increase in monthly retirement benefits. I conclude that the district courts correctly determined that Nicholas and Craddock did not obtain vested rights to the unearned increase. Therefore, the legislature was free to repeal A.B. 820. Accordingly, I dissent.
Fundamentally, retirement benefits are deferred compensation for services rendered. See Public Emp. Ret. v. Washoe Co., 96 Nev. 718, 721-22, 615 P.2d 972, 974 (1980); see also City of Las Vegas v. Ackerman, 85 Nev. 493 , 501, 457 P.2d 525, 530-31 (1969) (“ ‘[a] pension paid a governmental employee ... is a deferred portion of the compensation earned for services rendered’ ”) (quoting Great American Insurance Company v. Johnson, 126 S.E.2d 92, 94 (N.C. 1962)).
*46 Employees must provide a service in order to receive this deferred compensation. Thus, employees obtain a vested right only to deferred compensation that accumulates during their service. An employee “whose employment terminated before enactment of a statute offering additional benefits does not exchange services for the right to the benefits.’ ’ Claypool v. Wilson, 6 Cal. Rptr. 2d 77, 86 (Ct. App. 1992); see also Simpson v. Government Emp. Retire. Sys., 363 S.E.2d 90, 94 (N.C. Ct. App. 1987) (“A public employee has a right to expect that the retirement rights bargained for in exchange for his loyalty and continued services . . . will not be removed or diminished.”) (emphasis added).
Employees do not have vested rights to additional benefits distributed after an employee’s service ends. See Pasadena Pol. Off. Ass’n v. City of Pasadena, 195 Cal. Rptr. 339, 346 (Ct. App. 1983) (“these members had completed all their years of service and retired before any COLA benefit was enacted . . . [t]hus, they had no vested contractual right, based on the contract in effect during their employment, to continuation of the COLA benefit’ ’) (emphasis in original).
The two year terms of Nicholas and Craddock ended November 9, 1988, the day after the 1988 general election. See Nev. Const. art. 4, § 3, cl. 1 (amended 1996) (the term of office for members of the Assembly “shall be two years from the day next after their election”). A.B. 820 became effective June 23, 1989, over seven months later. Nicholas and Craddock filed retirement paperwork with the Public Employees’ Retirement Board after A.B. 820 became effective. The majority ignores the fundamental principle that retirement benefits must be earned, not scattered by legislative whim among the undeserving. A.B. 820 bestowed upon Nicholas and Craddock gratuitous compensation. The majority enhances this error by disregarding the fact that Nicholas and Craddock failed to provide service as legislators in exchange for this additional “compensation.” District Court Judge Deborah A. Agosti[1] said in the trial court that Nicholas’ right “did not somehow magically ‘re-vest’ when the legislation was enacted, for there was no exchange of services for benefits at that time.” While the legislature had the power to augment benefits, it also had the power to take these unearned benefits away as it did by repealing A.B. 820. In other words, what the legislature gave, the legislature could take away.
“The state legislature is within its authority to enact legislation and to amend or repeal its statutory law unless the legislative action is specifically precluded by constitutional limitations.” *47 County of Clark v. Buckwalter, 115 Nev. 58, 974 P.2d 1162, 1167 (1999) (Maupin, J., concurring). As the majority points out, the Contract Clause of the Nevada and United States Constitutions only “constitutionally protects] against impairment once absolutely vested.” See U.S. Const. art. I, § 10; Nev. Const. art. 1, § 15. Therefore, I agree with the majority to the extent that vested contract rights are constitutionally protected. However, the Contract Clause is inapplicable in this case because Nicholas and Craddock did not obtain vested contract rights to the additional benefits provided by A.B. 820. Nicholas’ and Craddock’s contract rights vested before A.B. 820, not after its passage. Consequently, I conclude that Nicholas’ and Craddock’s vested rights are restricted to the pre-A.B. 820 retirement benefit rates.
Additionally, it is important to note that Nicholas and Craddock made a calculated effort to exploit the passage of A.B. 820. At the time the legislature enacted A.B. 820, Nicholas was a paid lobbyist in the Nevada Legislature and actually attended hearings on A.B. 820. Nicholas also discussed the bill with State Senator Donald Mello, the moving force behind the benefit increase. Nicholas and Craddock carefully timed the filing of their retirement papers in their quest for an unwarranted windfall. Addressing Craddock’s claim in the Eighth Judicial District Court, Judge Gerard Bongiovanni succinctly noted, “Calculated reliance is not detrimental reliance.”
Under A.B. 820, this windfall amounts to an extra $863.27 a month for Nicholas and an extra $1,018.98 a month for Craddock for the rest of their lives. Over twenty-five years, Nicholas and Craddock would jointly receive an impressive $564,675.00 over what they would have received at the pre-A.B. 820 retirement rate.[2]
The majority fears that allowing the legislature to alter pension benefits “would undermine the validity of contractual benefits for all public employees.” An employee does not have a vested right to an additional retirement benefit which is granted after the employee’s service has ended. Otherwise, in the unlikely event *48 that the legislature decided to increase the retirement benefits for all state employees by 300 percent after their service to the State was over, could it be seriously argued that the legislature would not have the power to repeal such a statute?
For the foregoing reasons, I conclude that Nicholas and Craddock did not obtain vested rights to higher monthly benefits. The legislature enacted this extraordinary increase only after Nicholas and Craddock ended their legislative service. The majority’s decision essentially rewards Nicholas and Craddock with undeserved compensation for which the citizens of Nevada received nothing in return. Therefore, I dissent.

The Honorable Deborah A. Agosti, Justice, was subsequently elected to this court and voluntarily disqualified herself from participating in this matter.

It warrants mentioning that the legislature itself came to the conclusion that the citizens of Nevada deserve better. Initially, the legislature enacted A.B. 820 over the governor’s veto on a near unanimous vote. However, after five months of public outcry, the legislature reversed course in a special session and unanimously voted to repeal A.B. 820, thereby ending this unprecedented raid on the public treasury. As former Governor Mike O’Callaghan noted in an editorial, “Everybody in Nevada knew that the provisions of A.B. 820 were outrageous and wrong. Even the people who voted for it knew it was wrong . . . [but] greed overcame common sense and the responsibility candidates promise voters.” Mike O’Callaghan, Where I Stand—Mike O’Callaghan: Lingering odor from ’89, Las Vegas Sun, Sept. 28, 1999, at 7A.